# Richmond

COMMONWEALTH OF VIRGINIA AND STATE CORPORATION
COMMISSION V. VIRGINIA ELECTRIC AND POWER
COMPANY.

January 12, 1933.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and
Chinn, JJ.

The opinion states the case.

*John R. Saunders, Attorney General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys General,* for the Commonwealth.

*T. Justin Moore, Archibald G. Robertson* and *E. Randolph Williams,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The Commonwealth and the State Corporation Commission are seeking by this petition and writ to reverse a judgment of the trial court wherein the Commonwealth was ordered to refund to Virginia Electric and Power Company $8,358.93 for taxes held to be illegally assessed and collected.

While the charter of Virginia Electric and Power Company was not filed in evidence, from the stipulation of facts it appears that in 1909 the Virginia Passenger and Power Company obtained from the Commonwealth a charter for the purpose of acquiring and operating street railways, electric light and power properties owned by other public service corporations then in process of liquidation. Subsequently it acquired by purchase, merger, or otherwise, properties of still other public service companies. Several amendments to its charter were granted, one by which the name was changed to Virginia Electric and Power Company, and another by which it obtained the right to operate, as a common carrier for hire, motor vehicles on and over the

streets and public ways of Richmond, Petersburg, Norfolk, Portsmouth and counties adjacent thereto, so that in 1926 and thereafter Virginia Electric and Power Company, hereinafter designated company, was conducting its business in five branches, viz:

(1)   An electric street railway business in the cities of Richmond, Petersburg, Norfolk and Portsmouth, and an interurban electric railway between Richmond and Petersburg.

(2)   A motor bus business in the cities of Richmond, Petersburg, Norfolk and Portsmouth, and an interurban bus line operated along the State highway between Richmond and Petersburg.

(3)   An electric light and power business in the cities above named, and generally throughout Tidewater Virginia and northeastern North Carolina.

(4)   A merchandise business, in the sale of electrical appliances, incidental to its electric light and power business.

(5)   A gas business, in the generation, distribution and sale of gas for heat, light and power purposes in the city of Norfolk and in Norfolk county, both within the State of Virginia.

This controversy is confined to the amount of tax assessed upon the gross receipts derived, directly and indirectly, from electric light, heat and power revenues, and some miscellaneous and jobbing revenues.

Prior to 1929, under section 4070 of the Code of 1919, public utility companies were required by the Corporation Commission to furnish, on forms supplied by it, operating reports covering the calendar year, and under section 228 of the Tax Code (see Code 1930, Appendix, page 2197) they were required to file tax reports which covered the fiscal year, but in 1928 the Corporation Commission required the operating reports to cover the same period as the tax reports.

In its operating report the company included receipts from all sources, whether the receipts were obtained from

its public service business within or without the State, and other miscellaneous receipts from its non-public .service business, but in its tax report, filed under the provisions of section 228, the company reported only gross receipts derived from the sale of heat, light and power within the State.

In 1930 the Corporation Commission required the company to include in its tax report a statement showing in detail the various items making up the revenue received in Virginia from all sources, and on this report in 1930 assessed the company with a tax on all its gross receipts from its miscellaneous revenue as well as from the sale of heat, light and power. The miscellaneous revenues were made up of (1) rents from electrical appliances; (2) rents from property used in operation; (3) merchandise and jobbing; (4) other miscellaneous revenues.

The company filed a petition with the Corporation Commission, asking to be relieved of the gross receipts tax in so far as the same had been assessed upon its non-public service revenues. In the hearing before the Commission it developed that in its miscellaneous revenue receipts the company had included only net receipts from its merchandise and jobbing business, and that the gross receipts from its mercantile business were $494,470.49 more than it had included. In the same report the company had included certain other receipts from its operations outside the State.

The Commission held that the company was liable to a gross receipts tax on certain of its miscellaneous revenues, including the gross receipts from its merchandise and jobbing business, but deducted therefrom the tax assessed on gross revenues received from sources outside the State. The company paid, under protest, the tax thus assessed by the Commission, and thereafter filed its petition in the Circuit Court of the city of Richmond, praying for a refund, with the result above noted.

The question presented is whether the gross receipts of the company derived from sources other than transportation and the sale of heat, light and power are subject to a

tax. This requires a construction of sections 228, 229, and 230 of the Tax Code (see Code 1930, Appendix, pages 2197-2199).

Sections 176-178 of the Constitution of 1902 first authorized a gross receipts or franchise tax to be imposed upon railway and canal corporations. Section 178 limits this tax to "the gross transportation receipts." There is no such constitutional restriction limiting the meaning of gross receipts for such a tax imposed upon other public service corporations.

As we view the record, the question is not whether the legislature has the power to impose a tax upon water, light, heat and power corporations based upon gross receipts, including receipts derived from non-public service activities, but whether, in fact, the legislature has imposed such a tax.

The General Assembly, in 1910, by enacting chapter 61 (Acts 1910, page 90), for the first time authorized the Corporation Commission to impose a gross receipt or privilege tax upon corporations engaged in the business of furnishing to the public water, heat, light and power. Section 1 of this act requires every such corporation, in addition to reporting to the Commission all of its phyiscal properties, to report "its gross receipts for business done in Virginia for the year ending on the 30th day of June preceding * * *. The State Corporation Commission shall assess upon the said property" (physical) "the tax imposed thereon by law, and the franchise tax imposed by this act."

Sections 2, 3, 4 and 5 of the act require the corporations affected to include in their reports detailed statements concerning their properties.

Section 6 of the act reads thus: "Railway companies, which, in addition to operating a railroad, also sell heat, light or power within this State, shall come within the provisions of this act. The value of the plant of each such company shall be apportioned as between its heating, lighting and power business on the one hand, and its railroad business on the other hand, upon the basis of its gross

receipts from each department, and each such company shall segregate its gross receipts from the sale of heat, light and power from its gross receipts from its railroad, and report its gross receipts from the sale of heat, light and power to the State Corporation Commission, and pay the property and license tax as herein provided."

Section 7 imposed the tax in the following language: "Every corporation coming within the provisions of this act shall pay to the State an annual State franchise tax, equal to one per centum of its gross receipts, for the privilege of exercising its franchises in this State, which, with the taxes hereinbefore provided for, shall be in lieu of all taxes or license charges whatsoever upon the franchises of such corporation, and the shares of stock issued by it, and upon all its property as hereinbefore provided: * * *."

In 1916 this act was redrafted, amended and reenacted. While there were a number of changes made, some sections omitted and new sections added, the main features of the act as originally drawn remained. That part of section 1 of the act of 1910 requiring such corporations to make reports of their physical properties was reenacted, with only slight changes in verbiage and punctuation. That part of the section requiring a report of the gross receipts was reenacted with only one change, the addition of the word "all," thus: "Each such corporation shall also report its gross receipts from *all* business done in Virginia * * *." Acts 1916, page 800, chapter 472, section 36¼, subsection 1. (Italics supplied.) Section 5 of the 1910 act was omitted, and section 5 of the 1916 act is the same as section 6 quoted above. The imposition of the tax, so far as it affects the question now under consideration, is the same as that part of section 7 quoted above (see section 36½ of act 1916, page 802), with a change in the amount of the tax levied.

We have recited somewhat in detail the differences between the act of 1910 and the act of 1916 because the Commonwealth, both in its brief and in its oral argument, emphasized the fact that the word "all" was included in the

act of 1916, and that such inclusion shows that the legislature intended to include in the term "gross receipts" revenues derived from non-public service activities as well as receipts from the sale of light, heat and power, and that in 1914-1915 electric power companies began to engage in non-public service activities, and the amendment was adopted to include the revenues therefrom.

The testimony of R. E. Steele, who was in charge of the Division of Taxation and Statistics of the Corporation Commission, shows that there was no change in the policy of the Commission by reason of this change in the act. His testimony on the subject is as follows:

"Q. Have you made an examination of the tax reports of the companies filed with the Corporation Commission from 1910?

"A. Yes, sir, from 1910 to date, I examined the tax reports of light and power companies filed with the Commission.

"Q. What did you find in your examination?

"A. I found that, from the very passage of the law up until date, a majority of the companies (in number I am speaking of) were reporting merchandise sales, when they had any, and receipts received from all kinds of different non-operating sources."

If by the use of the word "all" it was the legislative intent to include in the term "gross receipts" such revenues when applied to corporations engaged in furnishing to the public water, or heat, light and power, it seems strange that the language of section 5 of the act, which deals with corporations engaged both in operating railroads and in selling heat, light and power, should have remained unchanged; that part of the section, after requiring separate reports from each class of business, provides that such corporations shall report their "gross receipts *from the sale* of heat, light and power to the State Corporation Commission *and pay* the property and *franchise* tax as herein provided." (Italics supplied.)

If the construction of section 1 of the act is as the Commonwealth contends, then it would seem that the legislature has required corporations engaged only in the sale of light, heat and power to include in their tax report all revenues derived from whatever source, while it has required corporations engaged both in operating railways and in the sale of electric current to include in their tax reports for this branch of their business revenues derived only from the sale of light, heat and power.

The language of section 5 is clear, and requires only a tax report on *gross receipts* received from the *sale* of light, heat and power.

The Commonwealth further contends that the continued administrative construction of the statute by the Commission is in keeping with the imposition of the tax upon receipts from non-public service activities, and is conclusive upon the court. In support of this contention it introduced a copy of a letter dated April 19, 1921, from Judge Rhea, then Chairman of the Commission, to the Warrenton Light and Power Company, in which is quoted that part of the section which includes the word "all," followed by this paragraph:

"From this it *would appear* that you should include in your statement of gross receipts the revenue received from the sale of electrical merchandise, and in this connection I will state for your information, that other utilities report revenue from business of this character." (Italics supplied.)

It would seem from this paragraph that the then Chairman of the Commission had some doubt as to the proper construction of these statutes, and the action of the Commission indicated that at different times and under different personnel different constructions have been placed upon them.

Mr. Steele also testified that in the years 1918-1920 several companies reported and paid the franchise tax upon gross receipts which included revenues from non-public service activities, but there is no evidence showing that

there was any change in administrative policy following the act of 1916.

The adoption of the Tax Code in 1928 (Acts 1928, chapter 45) made no substantial change in the meaning of the term "gross receipts," though there was some change in the *quantum* of the tax. It does appear that all the companies had been making what is termed in the evidence "operating reports" and "tax reports."

It was suggested that because prior to 1928 the two reports covered a different period, the Commission was unable to ascertain what revenues should be taxed and what should not be, and for that reason the tax upon its non-public service revenues was not made upon this company until 1930.

The evidence shows that in 1926, 1927, 1928 and 1929 the four large companies furnishing ninety per cent of the electric light, heat and power used in the State were assessed with a tax only on the gross receipts received from the sale of electric current, except that in 1929 the Appalachian Electric Power Company was taxed on some gross receipts which were not derived from these sources. We are, therefore, forced to the conclusion that while in some instances the smaller companies have included in their tax reports gross receipts derived from sources other than the sale of electric current and the franchise tax assessed thereon, there has been no consistent administrative construction of the sections assessing such revenues under the term "gross receipts."

It will be noted that this company, under another name, began business in the State of Virginia in 1909; that the act imposing the privilege tax upon gross receipts became effective in 1910; and that for a period of more than twenty years it has never been charged a gross receipts tax upon revenues derived from any source except the sale of electric current, although the law authorizing the tax has remained practically unchanged.

It further appears that in 1926, and thereafter, the com-

pany engaged in the business of selling electrical fixtures, that by other taxing authorities of the Commonwealth they were required to take out a merchant's license, and that every year since they have paid both a local and a State merchant's license tax for conducting this branch of their business. It is admitted by the Commonwealth that the company should not be charged a gross receipts tax upon this part of its business and a State merchant's license tax, but contends that it should be charged a gross revenue tax and be given credit for the amount of merchant's license it has paid to the State.

As hereinbefore pointed out, there has been no substantial change in this tax statute since 1916. It is significant to note that in the same act of 1916, section 48, page 798, provides:

"Every railroad company or other incorporated company in this Commonwealth whether *such privilege be granted in its charter or not,* which shall sell any mineral or forest product, *or any other article,* shall be taxed as other merchants dealing in like commodities. This act shall apply to companies keeping commissaries, or having agents for the sale of any other article than their own product; * * *. Any railroad company or *other incorporated company selling any article or product on account of the owner,* and receiving a compensation therefor other than for transportation, storage or handling as provided for in its charter, shall pay a license the same as commission merchants." (Italics supplied.)

It would seem, therefore, that it was the legislative intent to require the company to pay a merchant's license tax for conducting this branch of its business, rather than a franchise tax upon the gross receipts derived therefrom, and the Tax Commission has evidently so construed the statute.

Section 219 of the Tax Code (see Code 1930, Appendix, page 2193), provides that every express company shall pay a gross receipts tax "from the *operations* of such companies * * * within this State." Section 227 (see Code 1930, Appendix, page 2197) provides that telegraph and telephone

companies shall pay a gross receipts tax upon *"business done within this State."* (Italics supplied.)

Section 230 of the Tax Code (see Code 1930, Appendix, page 2199) imposes a special tax upon the gross receipts of corporations (1) doing the business of furnishing water, or heat, light and power; (2) telegraph companies; (3) telephone companies; (4) electric railway companies; (5) motor vehicle carriers; (6) Virginia Pilots Association.

It is admitted that the Commission, in imposing the franchise tax upon the corporations enumerated, restricts the meaning of the term "gross receipts" to revenue derived from public service activities, but when applying the term to corporations furnishing light, heat and power it is construed to include revenues derived from both public service and non-public service activities. Mr. Steele testified that the reason for the distinctions is based upon the use of the word "all" in section 228. The Commonwealth in its brief attempts to support that distinction on the same basis. If the legislature had intended to make such a distinction in the term "gross receipts" when applied to light, heat and power companies, it could, and doubtless would, have used language clearly expressing such intention.

After a careful study of the statutes involved, we are left in serious doubt whether the legislature intended to tax this company on the gross receipts derived from non-public service activities.

"Laws imposing a license or tax are strictly construed, and whenever there is doubt as to the meaning or scope of such laws, they are construed more strongly against the government in favor of the citizen." *Brown* v. *Commonwealth*, 98 Va. 366, 36 S. E. 485, 487. See, also, *County of Sussex* v. *Jarratt*, 129 Va. 672, 106 S. E. 384, 627; *Commonwealth* v. *P. Lorillard Company*, 136 Va. 258, 118 S. E. 323.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

GREGORY, J., dissenting.