# Richmond

W. W. Estes, DOING BUSINESS AS Estes Express Lines v.
THE CITY OF RICHMOND.

December 3, 1951.

Record No. 3924.

Present, All the Justices.

The opinion states the case.

*Oscar L. Shewmake, John C. Goddin* and *William M. Blackwell,* for the plaintiff in error.

*J. Elliott Drinard* and *E. Ballard Baker,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

In this proceeding W. W. Estes, doing business as Estes Express Lines, and referred to herein as petitioner, contends that the City of Richmond, hereinafter called the City, illegally assessed business license taxes against him for the years 1948 and 1949 in the respective sums of $907.11 and $908.32.

Petitioner is the owner and operator of a fleet of trucks and is engaged in the business of a common carrier of freight by motor vehicle. He holds fifteen certificates of public convenience and necessity from the State Corporation Commission of Virginia, under which he is authorized to transport freight by motor vehicles to and from certain termini and over designated routes in intrastate commerce. Though he also renders interstate freight service under authorization from the Interstate Commerce Commission, that service is not involved in this proceeding, for the license tax assessments complained of were based solely upon gross receipts from intrastate operations.

Under some of petitioner's Virginia certificates, he renders intrastate freight service over designated routes to and from Richmond to other cities and towns in this State, and by these routes, shipments originating in, or consigned to, Richmond, are hauled. Certain other of his State certificates permit and require service to and from other cities and towns, and over some of these designated routes shipments may pass through Richmond en route to destination. Still other certificates held by him authorize and require service over routes remote from Richmond, and shipments thus transported never enter this city.

An office and a freight depot are maintained and operated by petitioner in Chase City, Virginia, but the major part of the administrative and managerial functions of the business are carried on at the office and depot located at Richmond. However, in his intrastate business there are also maintained and operated five other depots in Virginia, which are located at Kilmarnock, Mathews, Gloucester, Warsaw and Norfolk respectively.

All of petitioner's intrastate business consists of hauling

goods to and from points on his certificated routes, and thus no freight is transported wholly within the city.

The City relies upon section 62 of its 1926 Charter (Acts of General Assembly 1926, ch. 318, pp. 533, 573), as amended by Acts of the General Assembly of 1938, ch. 339, pp. 533, 535,[1] as the source of power under which it ordained imposition of the license taxes for the years in question. The material part of section 62 follows:

"The council may grant or refuse licenses and may prohibit the conduct of business without such a license, and may require taxes to be paid on such licenses to all business which cannot, in the opinion of the council, be reached by the ad valorem system * * *".

For its immediate right to assess and collect the specific license taxes imposed upon petitioner for the years 1948 and 1949, the City relies upon section 10.203, chapter 10 of the Richmond City Code, as re-ordained December 23, 1947. The material parts of that section follow:

"Every person engaged in one or more of the following businesses shall pay a license tax equal to—$20.00 and thirty-four hundredths of one per centum of the gross receipts of the business or businesses conducted by him, as follows: * * *

"(b) The business of: * * *

"Packing, Crating, Shipping, Hauling or Moving Goods or Chattels for others. * * *"

"Every person engaged in one or more of the foregoing businesses, other than the operation of a laundry, and having no place of business in the City of Richmond, shall pay a license tax of—$300.00.

"The license taxes prescribed in this section shall be in addition to the license taxes prescribed elsewhere upon slot machines

---

[1] The 1926 Charter of the City of Richmond as amended, was repealed and a new charter enacted by Acts of the General Assembly of 1948, ch. 116, p. 177, which, in so far as it relates to the power to levy license taxes became effective on the first Tuesday in September, 1948. The City's authority to levy license taxes under that charter is set out in section 2.02, and section 21.02 declares that all previously enacted ordinances not inconsistent with that charter are continued in force until amended or repealed. However, as the ordinance under which these license taxes for years 1948 and 1949 were imposed was enacted December 23, 1947, the scope of the City's power under its 1948 Charter is not here involved because we find nothing in the ordinance in its imposition of these particular taxes that is inconsistent with the 1948 Charter.

or upon vehicles of any kind.'' Richmond City Code of 1937, as amended by ordinance of December 23, 1947; Ordinances and Resolutions of the City of Richmond 1946 to 1948, section 10.203, p. 611.[2]

The assessments imposed upon petitioner were based and computed upon the total gross receipts derived from his entire intrastate business and were levied under section (b) of the above ordinance, for conducting the business of ''Hauling or Moving Goods or Chattels for others.'' The trial court concluded that the City could legally assess petitioner with a city license tax for conducting the business in question. However, it held that the yearly license tax was to be based upon and limited to that portion of petitioner's gross receipts that ''arise out of and are connected with the handling of goods or chattels, the intrastate shipment of which either originates in, terminates in, or physically passes through the corporate limits of the City of Richmond, regardless of origin and destination, and regardless of whether they go into the Richmond depot of the petitioner or do not go through that depot * * *''

The result of the order and judgment which carried into effect the court's finding and conclusion was to reduce the assessed license taxes which were based upon the entire intrastate gross receipts and to authorize and order the imposition and collection of a yearly license tax for 1948 and 1949 based upon petitioner's gross receipts received from its intrastate shipments which arose in, terminated in, or passed through the city. Gross receipts from shipments that did not arise or terminate in, or pass through the city were excluded from the receipts upon which the tax was to be computed.

Petitioner's contention that the business license tax imposed upon him was illegal and should be cancelled is twofold. He insists:

(1) that the City's then charter granted no authority to impose through ordinance license taxes upon the business of conducting and operating intrastate certificated motor vehicle carriers of freight. In this connection he says that he is not doing business in the City, for there is no intracity transportation of freight; and

(2) that whether or not the City is empowered to require

[2] Chapter 10 of Richmond City Code has been amended and reordained by ordinance of December 26, 1950.

payment of a license tax by petitioner on the business conducted, the words and terminology of the ordinance, *i. e.,* "the business of * * * Packing, Crating, Shipping, Hauling, or Moving Goods or Chattels for others * * *" are not sufficiently descriptive or specific to include the business of operating certificated freight motor vehicle carriers.

The City assigned cross-error and asserts that the court should have concluded that petitioner was liable for a license tax based on his entire gross intrastate receipts and thus should have refused to alter or abate in any degree the assessments for the years involved.

If the language used in the ordinance under which the tax was imposed is not sufficiently descriptive or specific to include the business of a common carrier of freight by motor vehicle within the businesses selected for taxation, then the tax is illegal and the license was improperly required by the assessing authorities. And if that be true, we need not determine whether the City was or was not empowered by its charter to ordain the assessment of a license tax upon petitioner's business based upon his gross intrastate receipts or any part thereof.

The question presented is this:

When the tax ordinance under which these license taxes are sought to be imposed was enacted, was it the intention of the City Council that the language "Packing, Crating, Shipping, Hauling or Moving Goods or Chattels for others" should include the business of transporting freight by a certificated motor vehicle carrier and does the language used, upon fair and reasonable application, include within its scope that particular kind of business?

Twenty-five years before the passage of the ordinance in question, the term "motor vehicle carrier" was defined in our state law. In Acts of the General Assembly 1923, ch. 161, p. 195, it was declared to mean "every corporation or person * * * owning, controlling, operating, or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons or property for compensation over any improved public highways * * * in this State." By that act a motor vehicle carrier was also declared to be "a common carrier, a transportation company and a public service corporation within the meaning of the laws of this State", and provision was made for the issuance of certificates of public

convenience and necessity by the State Corporation Commission under which such a motor vehicle carrier was allowed to operate over designated routes, and was subject to the supervision and control of the Commission.

The term "common carrier by motor vehicle" was likewise statutorily defined by Acts of the General Assembly of 1936, ch. 129, p. 231, which repealed all inconsistent acts and also provided for the issuance of certificates of public convenience and necessity to such carriers, and the definition as there given but slightly altered now appears in section 56-273(d), Code of Virginia 1950. It thus appears that whenever a certificate of public convenience and necessity was to be issued for the operation of motor vehicles as common carriers thereunder a distinct meaning and significance was applied and attributed to the terms or descriptive words of "motor vehicle carrier" or "common carrier by motor vehicle."

That a real and material difference and distinction existed between the character of transportation business in which motor vehicles were employed and operated as intrastate common carriers under the supervision and control of the Corporation Commission of Virginia, and the less regulated business of local moving and hauling of goods at will for compensation by any and all kinds of vehicles was recognized, and known to the City, cannot be doubted. *Richmond-Petersburg Freight Lines* v. *Richmond,* 182 Va. 132, 28 S. E. (2d) 7.

Chapter 10 of the Richmond City Code of 1937, which is entitled "Concerning the Levy of Taxes and the Assessment of Licenses," was amended and reordained by the ordinance of December 23, 1947. It was by this ordinance that one who engaged in the business of "Packing, Crating, Shipping, Hauling or Moving Goods or Chattels for others" was first subjected to a license tax based upon the gross income derived from those specified businesses.

Consideration of certain circumstances which preceded the enactment of that ordinance and appear in evidence, casts some light upon just what was the intended scope of the descriptive words used, and what businesses were not intended to be included within the term "Hauling or Moving Goods or Chattels for others."

By a resolution of the City Council of January 11, 1947, a commission of fifteen members, known as the Tax Study Com-

mission, was created. Five of the personnel of that Commission were members of the Richmond City Council which was then composed of thirty-two members, and was the legislative body that enacted this ordinance. Briefly stated, the duties of the Commission were to study the financial condition of the City and the sources and methods of assessing taxes, and "to make recommendations with respect to a definite tax policy to be followed by the city." A report of this Commission discloses that it first directed its attention and study to "the problem of business licenses" and the inequities that obtained among licensees covered by the then tax ordinance. In a report, entitled Staff Report No. 2, under date of August, 1947, which was an interoffice memorandum compiled for and used by the Commission, it appears that study and investigation was made as to the basis or method by or under which license taxes should be levied, that is, whether a flat fee should be imposed upon a business conducted in the city, or whether the method of assessing license taxes should be by imposing a tax based and computed upon the gross receipts of a business. In this report under a heading designated "Restriction on Richmond's Power to License", certain prohibitions in the State laws on the power of a municipality to tax are cited, and this significant statement is made:

"In addition to those in the Tax Code, there are restrictions in the Code of Virginia which limit or prohibit municipal license taxation. For example, it limits local automobile licenses to amounts imposed by the State. On interurban busses, the State Code permits only a very small charge by municipalities. *Common carriers of freight and passengers are exempt from other than motor vehicle license taxes.*" (Italics added.)

Later in the report there is a discussion concerning omitted occupations. It, in part, follows:

" * * * Others who are left out, and whose basis for exemption should be re-examined are: (1) Freight Terminals; (2) *Moving and Hauling Business*; (3) Hospitals and (4) Professionals, such as industrial engineers and heating and ventilating engineers, who are not specifically covered." (Emphasis added.)

In a subsequent report, entitled "Interim Report on Licenses and Taxes," which seems to be based at least in part upon suggestions and recommendations made in Staff Report No. 2, it is disclosed that the Commission gave careful study to that

phase of taxation having to do with license taxes, and it is said that all businesses and professions carried on for profit in the city should contribute to its support, and that many conduct businesses within the city without paying license taxes. In another part of this report, among numerous businesses listed and said not to have theretofore been subjected to the payment of a license tax, but which were in the report recommended for taxation are those of "Packing, Crating and Shipping * * * and Moving and Hauling."

It therefore appears that the Tax Study Commission shortly before the enactment of the ordinance of December 23, 1947, reported to the Council of the City upon the license tax situation obtaining and pointed out that the "Moving and Hauling" business had been omitted from taxation by non-listing and should be included among the businesses to be subjected to a license tax, but it was of the opinion that the business of a common carrier of freight was not subject to a city license tax. With those reports before the City's legislative body, it can hardly be thought that when it included the moving and hauling business as one to be taxed, it, in so doing without any further or more definite or descriptive language, intended and believed that a certificated common carrier of freight fell within the scope of the term "Hauling or Moving Goods or Chattels for others."

It is more reasonable to conclude that the City Council, upon the enactment of the tax ordinance of December 23, 1947, was mindful of the distinction pointed out by its Tax Study Commission and did not intend or think that the words "Hauling or Moving Goods or Chattels for others" included the business of a common carrier of freight which is operated under and by virtue of certificates of public convenience and necessity granted by the Corporation Commission of Virginia and which is subject to the control of that body.

Also significant and persuasive of the belief that operating the business of a common carrier of freight by motor vehicle was not intended to be included within the general term "Hauling or Moving Goods or Chattels for others" is the circumstance that in listing, designating and classifying many other businesses on which license taxes were imposed, minute and specific descriptions are given in the ordinance. For example, engineers are classified and separately designated as "a chemi-

cal engineer", "a civil engineer", "a consultant engineer", "a contracting engineer", "an electrical engineer", "an industrial engineer", and "a mechanical engineer." Likewise, in the ordinance the business of conducting "a public garage" is classified separately and distinguished from each of the following businesses which are likewise separately and specifically designated for taxation, i.e., "cleaning motor vehicles", "greasing motor vehicles", "polishing motor vehicles", "oiling motor vehicles", "towing motor vehicles", "washing motor vehicles" and "motor vehicle repairing."

It is universally recognized that where there is any substantial doubt as to whether or not a particular business is included within the descriptive or designating language of a legislative enactment imposing a license tax, that doubt must be decided in favor of the taxpayer. This recognized canon of construction is stated thus in the following authorities:

"Statutes and ordinances imposing licenses and business taxes are generally to be construed liberally in favor of the citizen and strictly against the government, whether state or municipal, especially where they provide penalties for their violation. Accordingly, if the enactment is not clear and positive in its terms, or if it is reasonably open to different interpretations through the indefiniteness of its provisions, every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied.

"In order to authorize a license tax, an act or ordinance must show a plain intent to include the particular license within its terms, and its provisions must not be extended by implication beyond the clear import of the language used so that no one can be held to the payment of the tax unless he comes clearly within the terms of the particular act or ordinance. * * * 53 C. J. S. Licenses, sec. 13(b), p. 495.

"In construing a license tax law, courts regard the substance and purpose of the law rather than its form and language. The courts may resolve to clearness a vague statute imposing a license tax; and where doubt exists as to the meaning and scope of language imposing any tax, such doubt is to be resolved in favor of the taxpayer." 33 Am. Jur. Licenses, sec. 4, p. 329.

"As the ordinances constitute revenue measures, they should be construed in favor of the taxpayer." *Sedalia* v. *Shell*

*Petroleum Corp.* (8th Cir. 1936), 81 F. (2d) 193, 197, 106 A. L. R. 1327.

"It is elementary that tax laws are to be interpreted liberally in favor of taxpayers, and that words defining things to be taxed may not be extended beyond their clear import. Doubts must be resolved against the government and in favor of taxpayers." *Miller* v. *Standard Nut Margarine Co.,* 284 U. S. 498, 52 S. Ct. 260, 263, 76 L. ed. 422.

In *Commonwealth* v. *Virginia Elec., etc., Co.,* 159 Va. 655, 665, 167 S. E. 440, Mr. Justice Hudgins, now Chief Justice, quoted with approval this rule of construction as it appears in *Brown* v. *Commonwealth,* 98 Va. 366, 370, 36 S. E. 485, 487:

"Laws imposing a license or tax are strictly construed, and whenever there is doubt as to the meaning or scope of such laws, they are construed in favor of the citizen."

Similar statements announcing this rule of construction are found in the following decisions and encyclopedia. *Supervisors* v. *Tallant,* 96 Va. 723, 32 S. E. 479; *County of Sussex* v. *Jarratt,* 129 Va. 672, 106 S. E. 627; *Commonwealth* v. *Hutzler,* 124 Va. 138, 97 S. E. 775; *Commonwealth* v. *Lorillard Co.,* 136 Va. 258, 118 S. E. 323; *Commonwealth* v. *Stringfellow,* 173 Va. 284, 4 S. E. (2d) 357; *Williams* v. *Richmond,* 177 Va. 477, 14 S. E. (2d) 287, 134 A. L. R. 833; *Bott* v. *Commonwealth,* 187 Va. 745, 48 S. E. (2d) 235; 59 C. J. Statutes, secs. 160 and 670.

When the circumstances revealed by the reports of the Tax Study Commission are kept in mind and the ordinance as it appears with its minute and detailed classifications is tested by the canon of construction applicable to that character of legislation, it is made evident that the business of operating common carriers of freight by motor vehicle was not intended to be and was not included in the businesses mentioned in the ordinance upon which a license tax was imposed.

Our conclusions in this respect necessarily dispose of the City's assignment of cross-error and render it unnecessary for us to determine whether or not the City was empowered to ordain the imposition of a license tax upon petitioner based upon the whole or any part of the gross receipts received from the intrastate business conducted by him.

The order and judgment appealed from are reversed and the license taxes for the years 1948 and 1949 imposed by the City upon petitioner are cancelled and annulled.

*Reversed and final judgment.*