# Richmond

## ATLANTIC GREYHOUND CORPORATION V. CITY OF WINCHESTER.

November 30, 1953.

Record No. 4186.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Shewmake, Gary, Goddin & Blackwell*, for the plaintiff in error.

*Dabney W. Watts*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

In several petitions for the correction of erroneous assessments, Atlantic Greyhound Corporation, hereinafter referred to as the petitioner, contended that the City of Winchester, hereinafter referred to as the City, had illegally assessed petitioner with license taxes for the years 1947, 1948, 1950, 1951, 1952, and 1953, for the operation of its bus terminal in that City. The petitions were consolidated and heard together. The trial court in its final order held that, prior to 1951, the City had no authority under its charter or the general law to impose a license tax for the privilege of operating terminals for use by common carriers of passengers by motor vehicles, and that, therefore, the assessments of such tax for 1947, 1948 and 1950 were erroneous and invalid, and directed a refund of all sums paid by petitioner for licenses for said years. No error has been assigned to this holding, and it is not in question here. The court further held that assessments of such taxes for the years 1951, 1952 and 1953 were valid under the ordinances of the City by virtue of the 1950 amendment to § 46-65, Code of Virginia, 1950, and denied a recovery of any sums paid therefor. The petitioner excepted to this holding and we granted writ of error.

The material facts of the case were stipulated as follows:

"It is stipulated and agreed by and between counsel for the applicant, Atlantic Greyhound Corporation, and the City Solicitor for the City of Winchester that the facts pertaining to these applications are as follows:

"For the year 1947 and subsequent years involved, Atlantic Greyhound Corporation was assessed with and paid under protest a license tax for the privilege of operating a bus terminal in the City of Winchester, Virginia, which tax was imposed by ordinances of the City of Winchester which, with the exception of the year 1947, were as follows: 'BUS TERMINALS. For each motor passenger bus terminal, depot, station or other like place operated in the City of Winchester

for the accommodation of passengers, the tax shall be $500.00." For the year 1947 the ordinance was the same except that the amount of the tax was $250.00. These applications are directed to correcting the assessment of those taxes as being erroneous and securing refunds of such taxes.

"Atlantic Greyhound Corporation is a common carrier of passengers by motor vehicle engaging in intrastate commerce under authority of certificates of convenience and necessity issued by the State Corporation Commission of Virginia and in interstate commerce under certificates of convenience and necessity issued by the Interstate Commerce Commission. It transports passengers between Winchester, Virginia, and other points and places, and through Winchester, Virginia, on trips between other points and places. It engages in no intra-city transportation in the City of Winchester.

"It leases a parcel of real estate briefly described as 16-18 North Braddock Street which it operates as a bus terminal in connection with and incidental to its business as a common carrier and not for profit.

"Atlantic Greyhound Corporation permits other common carriers of passengers, namely, Capitol Greyhound Lines, Blue Ridge Transportation Company, Potomac Motor Lines and Virginia Stage Lines to use the facilities of the terminal. The other carriers, except Capitol Greyhound Lines, pay ten per cent of ticket sales at the terminal for the privilege of picking up and discharging passengers there. The expense of operating the terminal is prorated between Atlantic Greyhound Corporation and Capitol Greyhound Lines after deducting from the total expenses of operation and the receipts from the other carriers and the facilities hereinafter mentioned on the basis of ticket sales.

"Atlantic Greyhound Corporation permits the Union News Company to operate restaurant facilities in the terminal and receives for this ten per cent of the gross receipts plus $30.00 per month as a contribution to the cost of utilities. Union News Company pays to the City of Winchester an annual merchants license tax and an annual

restaurant license tax both of which are based upon gross receipts.

"Atlantic Greyhound Corporation permits the American Locker Company to maintain parcel lockers for the convenience of passengers, operated on the coin-in-slot principle, and receives therefor sixty percent of the gross receipts. American Locker Company pays the City of Winchester an annual license tax of twenty-five cents per locker.

"The expense of operation of the terminal exceeds the receipts from all of the above sources."

The question for our determination is whether, under the foregoing facts, the activities of the petitioner bring it within the exemption or limitation of the provisions of Code, § 46-65, Code of Virginia, 1950, as amended by an Act of the General Assembly, approved March 17, 1950, Acts, 1950, page 407.

Section 46-65, as amended in 1950, reads as follows:

"Limitations on imposition of such taxes and fees.—No such county, city or town shall impose any taxes or license fees upon any vehicle on which similar taxes or fees are imposed by the county, city or town of which the owner of such vehicle is a resident; nor shall more than one county, city or town impose any such license fee or tax on the same vehicle. Nor shall any such county, city or town impose taxes or license fees upon any vehicle belonging to any person who is not a resident of such county, city or town, when used exclusively for pleasure or personal transportation and not for hire, or for transporting into and within such county, city or town, for sale in person or by his employees of wood, meats, poultry, fruits, flowers, vegetables, milk, butter, cream or eggs produced or grown by him, and not purchased by him for sale, or for both such purposes, provided, that such vehicle is not used in said county, city or town in the conduct of any business or occupation other than those herein set out. *Counties, cities and towns may impose license taxes for the privilege of operating or conducting terminals for use by common carriers of passengers by motor vehicles.*

*Operation of terminals by such carriers in connection with and incidental to their business as such common carriers, and not for profit, or for such carriers where the local agent receives as his compensation a commission on tickets sold shall not be subject to the imposition of any such taxes. Lots used by such carriers for parking, storage and servicing of motor vehicles used in the business of such carriers and for taking on and discharging passengers shall not be deemed terminals. Nothing herein contained shall be construed to exempt the payment of license taxes on any other business that may be conducted on, at or in any such terminal or lot."*

The 1950 amendment consisted of the provisions contained in the italicized sentences. The Virginia Code Commission for better arrangement codified the amendment as Code, § 56-337.1, although it is also carried as a part of Code, § 46-65.

The City contends that since the facts show that petitioner permits, for compensation, four other common carriers of passengers by motor vehicles, to use its terminal, and rents the use of its facilities to others for restaurant and parcel locker purposes, it is engaged in other business, in addition to its operation of its terminal in connection with and incidental to its own business as a common carrier, and, therefore, does not come within the exemption of the 1950 amendment. The trial court adopted that view.

It is a well established rule that the powers of a municipality to impose occupation taxes are strictly construed in favor of the taxpayer and against the municipality. *Norfolk v. Griffin,* 120 Va. 524, 536, 91 S. E. 640; Cooley on Taxation, (3d Ed.), page 1101.

In *Estes v. Richmond,* 193 Va. 181, 68 S. E. (2d) 109, Mr. Justice Miller carefully reviewed the cases and authorities, and in commenting on the above rule said, in part, as follows (193 Va. page 189):

"It is universally recognized that where there is any substantial doubt as to whether or not a particular business is

included within the descriptive or designating language of a legislative enactment imposing a license tax, that doubt must be decided in favor of the taxpayer." 53 C. J. S., Licenses, § 13 (b), page 495; 33 Am. Jur., Licenses, page 329; *Sedalia* v. *Shell Petroleum Corp.*, (8th Cir. 1936), 81 F. (2d) 193, 197, 106 A. L. R. 1327; *Miller* v. *Standard Nut Margarine Co.*, 284 U. S. 498, 52 S. Ct. 260, 263, 76 L. ed. 422; *Common-wealth* v. *Va. Elec., etc., Co.*, 159 Va. 655, 665, 167 S. E. 440.

Prior to the enactment of the 1950 amendment, the City had no power to impose the license tax in question. The amendment granted that power; but specifically excluded its exercise where the operation of bus terminals was by "carriers in connection with and incidental to their business as such common carriers, and not for profit, * * * ."

The determination of taxability was thus limited to questions of the nature of the operation and purpose of the operation. The test of the exemption here claimed does not include any reference to size of the operation or the method, or to the number of carriers engaged therein. That test is whether the petitioner operated its Winchester terminal "in connection with and incidental" to its business as a common carrier of passengers by motor vehicles, and "not for profit." The facts stipulated are couched in the language of the statutory exemption, and are in accordance with those found by the trial judge. The language of the statute is clear and simple, and it should not be extended by implication and conjecture.

The joint use of terminals in the field of transportation is a common practice in cities where lines of carriers meet. Such terminals are for the benefit of the traveling public and the carriers, because they facilitate interchange from one line to another. The language of the exemption is in the plural and manifestly contemplates the joint use of bus terminals, for it provides, in part, as follows: "Operation of terminals by such carriers [common carriers of passengers by motor vehicles] in connection with and incidental to

their business as such common carriers, and not for profit, * * * shall not be subject to the imposition of any such [municipal license] taxes." It is hardly reasonable to suppose the legislature intended that the joint operation of a terminal by several carriers should be subject to the tax, but that an individual operation should be exempt.

The several carriers using the terminal merely shared the expense of its operation, and the several concessionaires of restaurant and parcel locker privileges contributed only a part of the cost. Thus, the terminal was not operated for profit, and no profit was shown. The license taxes on such "other business" were imposed on and paid by the operators thereof.

The probable conduct of restaurant, rest room, and checking facilities in terminals was undoubtedly recognized by the Act in the provision that: "Nothing herein contained shall be construed to exempt the payment of license taxes on any other business that may be conducted on, at or in any such terminal or lot." Each of such facilities is for the convenience and benefit of passengers, especially at bus terminals, since buses have no dining or rest room facilities.

The admitted facts in this case clearly show that the petitioner operated its Winchester bus terminal in connection with and incidental to its business, and not for profit. They bring the petitioner squarely within the exemption of the 1950 amendment, and it is not, therefore, subject to the license taxes imposed by the City of Winchester for the years 1951, 1952 and 1953.

For the reasons stated, the judgment of the trial court is set aside insofar as it relates to the license taxes assessed against petitioner for the years 1951, 1952 and 1953, and this court, in pursuance of § 8-493 of the Code of Virginia, 1950, will enter a final judgment adjudging and ordering that the Atlantic Greyhound Corporation be exonerated from the payment of the license taxes assessed against it for the said three years, and recover of the City of Winchester such sums, including fees and penalties, as it has paid to the

City as license taxes for the privilege of operating its bus terminal within the said City for the years aforesaid, together with the costs of this proceeding.

*Reversed and final judgment.*