## Staunton

CITY OF RICHMOND v. LEWIS H. BOSHER, JR.

September 14, 1955.

Record No. 4398.

Present, All the Justices.

The opinion states the case.

*J. E. Drinard* and *John P. McGuire, Jr.*, for the plaintiff in error.

*Edward E. Lane, Eppa Hunton, IV* and *Joseph A. Howell, Jr.*, for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This case involves an appeal by the City of Richmond from an order granting Dr. Lewis H. Bosher's application for correction of the assessment of professional license taxes made against him by the city for the years 1951 and 1952.

The taxes complained of were levied against Dr. Bosher pursuant to § 10-29, Article 4, Chapter 10, of the Richmond City Code, the applicable part of which reads:

"(a) Every person engaged in one or more of the following

businesses or professions and having an office or place of business in the City of Richmond shall pay a license tax equal to * * * $20.00 and one percentum of the gross receipts of the one or more businesses or professions conducted by him as follows: The business or profession of * * * a doctor of medicine * * * a physician * * * a surgeon * * *."

Section 10-28 of the City Code defines the term "gross receipts of the business".[1]

Dr. Bosher is a surgeon, licensed by the Commonwealth of Virginia. His specialty is thoracic or chest surgery. He is also an Assistant Professor of Surgery on the faculty of the Medical College of Virginia, located in the city, and a member of the attending staff of McGuire Veterans Administration Hospital, located in Chesterfield County, where he participates in a program of medical education established by congressional authority.

Dr. Bosher's private practice is conducted at his office in the city and at the various hospitals in Richmond. He admits that the receipts from his private practice are taxable under §§ 10-28 and 10-29 of the City Code since such receipts are gross receipts of the profession conducted, whether as a "doctor of medicine", a "physician", or a "surgeon", under the terms of the ordinance.

The city excluded from the computation of Dr. Bosher's license tax the compensation received from the Commonwealth for services as a member of the faculty of the Medical College of Virginia, and Dr. Bosher contends that "the compensation which he receives from the United States for identical services as a member of the attending staff at McGuire's hospital should likewise be excluded from the basis of computation of his license tax."

Dr. Bosher's contention is that the compensation paid him for services at McGuire's hospital was not derived by him from the

[1] § 10-28. Definitions.—* * *

(b) Gross receipts of the business—The phrase "gross receipts of the business" shall mean the gross sale of merchandise and the gross receipts of the business, occupation, or profession from all earnings, fees, commissions, brokerage charges and rentals, and from all income whatsoever arising from or growing out of the conduct of the business, occupation, or profession licensed in this chapter, during the license tax year immediately preceding the license tax year for which the tax is being computed, without any deduction whatsoever, unless otherwise expressly provided.

If any part of the gross receipts arises out of the conduct of the business, occupation or profession outside of the city, it shall nevertheless be included in the basis for the license tax for the privilege of conducting the business, occupation or profession within the city.

practice of his profession but was paid him as a member of the visiting staff of the hospital for his services in instructing and supervising the residents on the surgical service of the hospital, and teaching those who are employed on a full-time basis.

The city contends that the evidence shows unquestionably that Dr. Bosher is engaged in practicing medicine and surgery at McGuire's, "and that even if it be a fact that he also does something more, namely, teaches, trains and instructs the residents and internes, and even if we should concede—though we do not so concede—that teaching is the primary purpose of his employment, he is nonetheless engaged in the practice of medicine or surgery within the meaning of our license tax ordinance, and is subject to be taxed on his receipts from that hospital."

It is conceded that Dr. Bosher is employed by the Veterans Administration, a federal agency, and his compensation from this source is based on an allowable number of visits to the hospital. The evidence discloses that although Dr. Bosher makes more than the allowable number of visits to the hospital, he receives no compensation for this extra service, nor does he receive compensation based upon the amount of time spent at the hospital.

While there are several points relied upon by Dr. Bosher as to why the compensation received by him at McGuire's should not be included in his gross receipts for tax purposes, and while several assignments of error are stressed by the city to the lower court's ruling in favor of Dr. Bosher, we are of the opinion that the decision of one question is determinative of the issue before us, *i.e.*: Does the Richmond license tax ordinance [§ 10-20] now in force cover Dr. Bosher's activities at McGuire's hospital?

It is fundamental that a municipal taxing ordinance must specifically define the particular activity which it intends to tax. *Estes* v. *City of Richmond*, 193 Va. 181, 68 S. E. (2d) 109.

Dr. Bosher testified that his employment at McGuire's was for the purpose of teaching or "training the resident staff to qualify them in that particular specialty [thoracic surgery] in which I am engaged. Otherwise I would not be present."

Dr. John B. Truslow, Dean of the School of Medicine, Medical College of Virginia, testified that "members of the resident staff" were graduates in medicine who had "achieved their internship", and who were in training for further certification in a specialty field, "and those training programs in many fields are approved at Mc-

Guire Hospital"; that Dr. Bosher's activities at McGuire's are under the supervision of the Dean's Committee which "supervises and directs the training program in the Veterans Hospital at McGuire".

Dean Truslow was asked:

"Q. What is Dr. Bosher's position at McGuire?

"A. He is an attending in thoracic surgery. His responsibility is the teaching of the residency program in thoracic surgery.

"Q. Are the residents graded?

"A. Yes, sir, they are graded in precisely the same way as they are at the Medical College of Virginia Hospital and many other hospitals.

"Q. Can you state whether or not the two programs [McGuire's and the Medical College of Virginia] are similar?

"A. I would say they are just as similar as any two programs can be that are involved in two different buildings."

Dean Truslow was cross examined in an effort to prove that Dr. Bosher was practicing his profession at McGuire's. He was asked:

"Q. Does he make diagnoses himself?

"A. I am sure he does, yes. May I emphasize one thing. These diagnoses under these circumstances are made in a teaching relationship, with consultation, discussion, and he finds out from the residents who work up the case the data, he finds out the results of the laboratory tests, he suggests other ones, they follow them out, but it is a combination, a consultation arrangement in a teaching atmosphere.

\*       \*       \*       \*       \*       \*       \*

"Q. But when he operates with the residents operating with him I presume that is as any other surgeon who has people assisting him in the operating room?

"A. Yes, but in this, I think I can clarify this point this way, in his operating he may be what is known as the Chief Surgeon with the residents assisting him. Or more often the residents are in the role of Chief Surgeon and he is the first assistant ready and working with them. He is right there and during that period of time he has an element of supervision and an element of responsibility for the training program. It is intrinsic in the fact we are training young men to become surgeons.

"Q. Hasn't he any responsibility for the patient?

"A. Of course he has, you can't ever get away from that as long as you live.

* * * * * * *

"Q. I understand, but the practice of medicine, the responsible practice of medicine by the instructor has got to be a part of the training program, hasn't it, you can't get away from it?

"A. No, I think we have lost a point here, and I want to try to be sure to express it because it is intrinsic in the program, in the training program that medicine has to be practiced. But I think the status of a man who is the teacher in this relationship is quite different from a man who is accountable only to himself and entirely —I mean he is working on patients with no particular relationship, in having him instructing or leading this man and guiding that man in his work. And I do believe that is an extremely important element which is added to this picture to establish a training and teacher relationship.

"Q. I believe I understand you. When Dr. Bosher performs operations, diagnoses, and prescribes treatment out there, he does something more, he also trains and teaches, that is true, is it not, and is that not what you are saying?

"A. I would like to reverse it, he is out there to teach and train, and he is also taking responsibility for the patient's hospital care. But his purpose, his reason for being there—

"Q. Yes, what is his ultimate reason for being there?

"A. His ultimate reason is the teaching program. Otherwise the patient would be cared for, the patient would be cared for if he wasn't there, but he is there for the purpose of establishing the teaching program."

Dr. Bosher receives no compensation for his diagnoses of patients at McGuire's, nor does he receive any compensation for the operation in which he participates. His compensation is derived from the teaching program, this is what his employment covers; if it were not for the teaching element, as he states, he "would not be present". There is no evidence in the record to the contrary.

As stated in his brief, Dr. Bosher "does not contest the *power* of the city to tax (his) compensation for his duties at McGuire's Hospital, but contends * * * that *the city has not exercised that power in its license tax ordinance as presently drawn.*"

We are of the opinion that Dr. Bosher's employment at Mc-Guire's is for the purpose of *teaching*, and the profession of *teaching* is not included in the professions mentioned in § 10-29 of the City Code. The "gross receipts" contemplated by the framers of this section does not include income from teaching. The clear intent of this section was to include gross income "growing out of the conduct of the * * * profession licensed in this chapter * * *" [§ 10-28, Definitions], such, for example, as Dr. Bosher's income from his private practice.

"In order to authorize a license tax, an act or ordinance must show a plain intent to include the particular license within its terms, and its provisions must not be extended by implication beyond the clear import of the language used so that no one can be held to the payment of the tax unless he comes clearly within the terms of the particular act or ordinance." 53 C. J. S., Licenses, § 13(b), pp. 495, 496.

"In construing a license tax law, courts regard the substance and purpose of the law rather than its form and language. The courts may resolve to clearness a vague statute imposing a license tax; and where doubt exists as to the meaning and scope of language imposing any tax, such doubt is to be resolved in favor of the taxpayer." 33 Am. Jur., Licenses, § 4, p. 329.

"It is elementary that tax laws are to be interpreted liberally in favor of taxpayers, and that words defining things to be taxed may not be extended beyond their clear import. Doubts must be resolved against the government and in favor of the taxpayers." *Miller* v. *Standard Nut Margarine Co.*, 284 U. S. 498, 52 S. Ct. 260, 263, 76 L. ed. 422; See also *Supervisors* v. *Tallant*, 96 Va. 723, 32 S. E. 479; *County of Sussex* v. *Jarratt*, 129 Va. 672, 106 S. E. 627; *Commonwealth* v. *Hutzler*, 124 Va. 138, 97 S. E. 775; *Commonwealth* v. *Lorillard Co.*, 136 Va. 258, 118 S. E. 323; *Commonwealth* v. *Stringfellow*, 173 Va. 284, 4 S. E. (2d) 357; *Williams* v. *Richmond*, 177 Va. 477, 14 S. E. (2d) 287, 134 A. L. R. 833; *Bott* v. *Commonwealth*, 187 Va. 745, 48 S. E. (2d) 235.

The correct result having been reached, the order granting the relief prayed for is

*Affirmed.*