## CIRCUIT COURT OF THE CITY OF RICHMOND

Virginia Hiway, Inc.

v.

City of Richmond

September 3, 1992

Case No. LT-4813–4

BY JUDGE ROBERT L. HARRIS, SR.

In late 1991, the City of Richmond assessed Virginia Hiway, Inc., a transportation broker, with a business license tax and sought to recover amounts it claimed were due for the years 1988 to 1991. Virginia Hiway challenges that assessment, fundamentally, on the validity of the levy, and alternatively, on the manner in which the assessment was calculated. Because the Court finds that the levy was invalid, the latter issue need not be addressed.

Virginia Hiway challenged the validity of the levy both by raising constitutional questions and by questioning the city's interpretation and application of its taxing ordinances. Again, because the court finds that the city has not enacted an ordinance which effectively imposes a business license tax obligation on transportation brokers, the constitutional questions raised by Virginia Hiway are not addressed.

Transportation brokers act as "middle-men" between manufacturers or other holders of goods and the transportation companies which move those goods from one point to another. The transportation broker enters into two contracts, first, with a company holding goods, to arrange transportation to a certain point in exchange for a fee, and second, with a transportation company, to carry out the actual movement of the goods, again, for a set fee. If the former fee, paid by the holder of goods to the broker, exceeds the latter fee, paid by the broker to the transportation company, then the broker makes a profit. This is the business in which Virginia Hiway is engaged; therefore, the first, and ultimately, deciding question, which the

court faces is whether any ordinance enacted by the City of Richmond imposes a business license tax on such a business.

Article XIII of Chapter 28 of the Richmond City Code addresses business license taxes. In addition to sections which address specific businesses, *see, e.g.*, Richmond City Code §§ 28-388 (dance halls); 28–390 (night clubs); 28–398 (boiler making and machine shops), there are two broad categories of businesses grouped within separate sections. Section 28–440 deals with certain businesses under the heading of "Personal Services" while § 28–444 treats certain businesses under the heading of "Professional Services." While each of those sections includes long lists of specific businesses, each also, since 1986, has incorporated a "catch-all clause" following the specific list, designed to impose a tax on certain businesses not specifically listed.

> Every person, rendering or providing *personal services* neither listed immediately preceding or elsewhere in this article and who is not specifically exempted by law from payment of such license tax, shall pay a license tax equal to thirty dollars ($30.00) and forty-three hundredths (0.43) of one percent of gross receipts of such business.

Richmond Code § 28–440(a) (as amended) (emphasis added); *see also* § 28–444(a) (utilizing similar language for "Professional Services").

Since no specific listing is included in the Code's tax provisions for transportation brokers, the city seeks to tax Virginia Hiway through the catch-all clause of § 28–440(a), the Personal Services section. The Court believes that a levy on a transportation broker which grounds its authority in this personal services catch-all clause must fail.

A city may not rely upon inherent vagueness in a taxing ordinance in order to impose a tax on one of its citizens.

> It is universally recognized that where there is any substantial doubt as to whether or not a particular business is included within the descriptive or designating language of a legislative enactment imposing a license tax, that doubt must be decided in favor of the taxpayer . . . .

> "Statutes and ordinances imposing licenses and business taxes are generally to be construed liberally in favor of the citizen and strictly against the government, whether state or

municipal, especially where they provide penalties for their violation. Accordingly, if the enactment is not clear and positive in its terms, or if it is reasonably open to different interpretations through the indefiniteness of its provisions, every doubt as to construction must be resolved in favor of the one against whom the enactment is sought to be applied."

*Estes v. City of Richmond*, 193 Va. 181, 189, 68 S.E.2d 109, 114 (1951) (quoting 53 C.J.S. *Licenses* § 13(b) at 495).[1] In *Estes*, the Virginia Supreme Court engages in a detailed analysis of legislative history to find that the Richmond City Council did not intend to include "common carriers of freight" within a section taxing those involved in the "Moving and Hauling Business." *See, id.* at 186–89, 68 S.E.2d at 113–14. In a case more akin to the one at bar, in that it deals less with legislative history than with pure statutory interpretation, the Virginia Supreme Court upheld Henrico County's taxing of an employment agency under an ordinance which applied a business license tax to "[t]he business or profession of . . . a furnisher of domestic or clerical help, labor or employment." *County of Henrico v. Management Recruiters of Richmond, Inc.*, 221 Va. 1004, 1005–06, 277 S.E.2d 163, 163–64 (1981) (quoting Henrico County Code § 8–50). The taxpayers, two employment agencies which primarily provided "white collar" employees, *see, id.* at 1006-07, 277 S.E.2d at 164, challenged the application of the ordinance to their businesses by arguing that it clearly only applied to providers of domestic or clerical help. *Id.* at 1008, 277 S.E.2d at 165. The County argued that the ordinance was designed to tax not only providers of domestic or clerical help, "but also a furnisher of labor and a furnisher of employment." *Id.* at 1008, 277 S.E.2d at 165. In upholding the County's interpretation of its ordinance, the court "accord[ed] consideration to the administrative interpretation and practical construction given it by the public official charged with its administration." *Id.* at 1010, 277 S.E.2d at 166. Supporting that construction was a twenty-year history of consistent statutory interpretation by the County and similar statutory interpretations by other political subdivisions. *Id.*, 277 S.E.2d at 167.

---

[1] Although no financial penalty was sought here, § 28–340 of the Richmond City Code does provide for a ten percent per annum penalty, in addition to interest charges. Additionally, § 28–344 makes failure to pay the full amount due a misdemeanor.

In the case at bar, there is none of the historical continuity present in *Management Recruiters*. Prior to the introduction of the catch-all clause in 1986, transportation brokers were not taxed by the City, and it was not until 1990 that the city asserted its argument that such brokers were captured by the catch-all clause. It is fundamental:

> that tax laws should be certain, both as to the thing taxed and as to the amount of the tax, and the manner for its ascertainment; that the taxpayer may have an opportunity, without the expense of litigation, to pay such taxes as he may owe; and a tax law which does not accomplish this purpose ought to be held invalid.

*Williams v. City of Richmond*, 177 Va. 477, 486, 14 S.E.2d 287, 290 (1941) (quoting *Western Union Tel. Co. v. State*, 62 Tex. 630). Put another way, a taxpayer should be able to look at a taxing ordinance and reasonably see that it may apply to him. In the Richmond ordinance at issue here, no definition is offered for either "professional services" or "personal services." In that absence, either definitions common to the English language[2] or guidelines published by the Commonwealth's Department of Taxation, which themselves vary little from commonly-accepted definitions, *see, Guidelines for Local Business, Professional and Occupational License Taxes* §§ 3–4, 4–3 (1984) (hereinafter "Guidelines"), offer reasonable sources upon which a taxpayer (and a taxing political subdivision) might rely.

The reasonableness of the Guidelines is enhanced by the fact that they are issued pursuant to statutory directive. The City's taxing authority derives from Chapter 37 of Title 58.1 of the Virginia Code, and § 58.1–3701 directs the Department of Taxation to "promulgate guidelines defining and explaining the categories listed in subsection A of § 58.1–3706 for the use of local governments in administering the taxes imposed under authority of this chapter." Va. Code Ann. § 58.1–3701 (1991). While, as the City points out, it is not bound by

---

[2] *Webster's New Twentieth Century Dictionary* defines, in its most relevant selection, "services" as "work done or duty performed for another or others . . . ." *Webster's New Twentieth Century Dictionary* 1658 (2d ed. 1983). The same source defines "personal" as "belonging to human beings, not to things or abstractions . . . private; individual; affecting individuals; peculiar or proper to a certain person or to private actions or character . . . ." *Id.* at 1338. "Professional," in the relevant selection, relates to "a vocation or occupation requiring advanced training in some liberal art or science and usually involving mental rather than manual work . . . ." *Id.* at 1437.

any definitions offered in the Guidelines, the City cannot, without affirmative legislative act, seek to push out of its own definitional vacuum a definition appropriately supplied by appropriate state guidelines.

Under the Guidelines, a "Professional Service" is one, in addition to certain specifically listed services, "in which a professed knowledge of some department of science or learning, gained by a prolonged course of specialized instruction and study is used by its practical application to the affairs of others . . . ." *Guidelines* § 3–4. A "Personal Service" is "[a]ny service rendered for compensation either upon or for persons, animals or personal effects." *Guidelines* § 4–3.

The City does not attempt to place Virginia Hiway under either of those definitions, but rather argues, in essence, that because the ordinance entitled "Personal Services" includes among its list of 128 specifically taxed enterprises certain ones more appropriately categorized as "Business Services" than "Personal Services,"[3] the definition of "Personal Services" should implicitly include all "Business Services." This argument is suspect on its face but becomes even more specious when considered with the actual language of the ordinance. The specific list upon which the City places the burden of its argument is introduced by the following language: "Every person engaged in one or more of the following *businesses* shall pay . . . ." Richmond Code § 28–440(a) (emphasis added). The omnibus clause which follows the specific list addresses "[e]very person, rendering or providing *personal services* neither listed immediately preceding or elsewhere in this article . . . shall pay . . . ." *Id.* (emphasis added). Thus, while this section is entitled "Personal Services," the specific list is introduced with the term "businesses," making its relevance to the meaning of "personal services" even more debatable. Arguably, had the city chosen to apply the omnibus clause to *businesses* not listed elsewhere, it might have had a stronger argument for application of the clause to Virginia Hiway. *But see Williams,* 177 Va. at 486–87, 14 S.E.2d at 289–91 (invalidating an

---

[3] For example, while § 28–440 specifically lists, among other business interests, caterers, embalmers, electrologists, barbershops, and photographers, all clearly providing a personal service, the section also specifically lists, among others, bowling alleys, miniature golf courses, theatres, skating rinks, kennels, and telephone answering services, all, arguably, more "business" than "personal." *See,* Richmond Code § 28–440.

omnibus clause which sought to tax "any person, firm, association, partnership, or corporation engaged in any business, occupation or profession"). In such a case, even absent a specific definition, both the common meaning of "business" and that given in the Guidelines would have served notice to a transportation broker of its liability for this business license tax. *See Guidelines* § 4–4 (business service "[a]ny service rendered for compensation to any business, trade, occupation or governmental agency").

By attempting to stretch, by implication, the meaning of "personal services" to incorporate any non-enumerated business service, the City threatens to so eviscerate the term "personal services" of any meaning as to create the same fatal flaw in the current omnibus clause as the Virginia Supreme Court found in an earlier version.

> The imposition of a license tax on any unnamed business rests solely in the hands of the commissioner of the revenue. The subject of a tax must be determinable from the statute or ordinance and must rest upon the judgment of the *legislative* body; not upon the whims of a ministerial officer. The intent of the legislative body must be found in the language used . . . . Intent cannot be presumed . . . . The license tax here is solely the result of the action of the commissioner of the revenue. He, and not the council, has selected the subject of taxation.

*Williams*, 177 Va. at 487, 14 S.E.2d at 290.

Indeed, one measure of the inadequacy of the current ordinance for the purposes urged here is the fact that the City of Richmond's taxing authorities initially informed Virginia Hiway that it was to be taxed as a "professional service." The testimony of Mr. Doshi, the City's tax audit manager, indicated that the debate over categories centered on the nature of Virginia Hiway's receipts. Had they been characterized as "commissions," the tax rate would have been at the higher "professional services" rate; since they ultimately were treated in their entirety, as "gross receipts," the lower "personal services" rate was selected. The administrative arbitrariness with respect to the distinctions between the City's two taxing categories becomes even more evident in that context. Clearly, under the argument pressed by the City in this case, administrative personnel are allowed to supply definitions for undefined terms and then justify

those definitions by citing to themselves, with, at best, a wink to legislative authority.[4]

Accordingly, the court finds that the language of the City's catch-all clauses, whether under personal or professional services, is inadequate to reflect an intent by the legislative authority to impose a business license tax on transportation brokers. Therefore, the levy made by the City on Virginia Hiway, Inc., for the years 1988 through 1992 is declared void, and all payments made to date by Virginia Hiway on any assessment based upon this invalid levy are to be refunded.

---

[4] However, the fact that an administrator, without apparent legislative authority, has attempted to extend the reach of a taxation ordinance beyond the language of that ordinance need not require a court to invalidate an arguably otherwise legitimate ordinance. In *Fallon Florist, Inc. v. City of Roanoke*, 190 Va. 564, 58 S.E.2d 316 (1950), a disagreement over what constituted, for taxation purposes, a "floral arrangement" led the court to observe, "It is well settled that a statute is not fatally indefinite because questions may arise as to its applicability, or opinions may differ with respect to what falls within its terms. . . ." *Id.* at 590, 58 S.E.2d at 329.