# Richmond

## COUNTY OF HENRICO

## V.

## MANAGEMENT RECRUITERS OF RICHMOND, INC., AND DUNHILL OF GREATER RICHMOND, INC.

April 24, 1981.

Record No. 790211.

Present: All the Justices.

*Joseph P. Rapisarda, Jr., Assistant County Attorney (William G. Broaddus, County Attorney, on briefs), for appellant.*

*James F. Pascal (Hirschler, Fleischer, Weinberg, Cox & Allen, on brief), for appellees.*

HARRISON, J., delivered the opinion of the Court.

This appeal by the County of Henrico involves the interpretation of a county ordinance under which business license taxes were imposed upon Management Recruiters of Richmond, Inc., and Dunhill of Greater Richmond, Inc. Henrico County Code § 8-50 read, in pertinent part, as follows:

> Every person engaged in one or more of the following businesses or professions . . . shall pay a license tax . . . as follows:

The business or profession of:

> . . . a furnisher of domestic or clerical help, labor or employment. . . .

Pursuant to Virginia Code § 58-1145, Management and Dunhill each filed a petition for relief from allegedly erroneous assessments, seeking refunds of taxes paid to the county for the years 1974 through 1978. The taxpayers alleged that the phrase "a furnisher of domestic or clerical help, labor or employment" in County Code § 8-50 did not describe their business activities and that their business activities were not otherwise described in the County Code for purposes of imposing business license taxes. The cases were consolidated, and the court below held that the portion of the ordinance identifying and describing the business or profession of a furnisher of domestic or clerical help, labor or employment "is ambiguous, not clear and positive in its terms, and reasonably open to different interpretations, in its descriptive application to the businesses of the petitioners. . . ." Accordingly, the court granted the relief requested and directed Henrico to refund to Management the license taxes paid by it for the years 1974 through 1978, inclusive, and to Dunhill the license taxes paid by it for the years 1975 through 1978, inclusive. Thereupon Henrico noted this appeal.

Management and Dunhill are employment agencies which do business in Henrico. An employment agency is defined in Virginia Code § 54-872.16(4) as follows:

> "*Employment agency*" means any person who shall advertise through any means for the purpose of assigning or directing a person to some other employer to work and charges any fee or commission for such service; provided that this chapter shall not apply to (a) persons engaged exclusively in the business of providing part-time or temporary personnel or business services to or for others and under their direction so long as the individuals provided to perform such services remain for all purposes the employee of such persons, and (b) migratory farm labor where otherwise provided by law.

During the years 1974 through 1978, Henrico imposed business license taxes on the two private employment agencies pursuant to County Code § 8-50 and Virginia Code § 58-266.1. The parties agree that the agencies involved here render a service both to employers and to individuals seeking employment. A majority of potential employers utilizing the services of the two agencies seek job applicants

for managerial positions in the sales, administrative, technical, and financial fields; a majority of the job applicants utilizing the services of the agencies are seeking positions of employment in these fields.

Management and Dunhill charge a contingent fee for their services, payable either by the employer or by the job applicant, but not by both. The fee is payable only in the event the agency is the procuring cause of an employer-employee relationship between the employer and the job applicant. In excess of 90% of the annual gross revenues of both Management and Dunhill were derived from what these agencies called "employer paid fees," *i.e.*, contractual arrangements whereby the employer, as opposed to the job applicant, agrees to pay and then pays the appropriate fee.

No job applicant was obligated to accept a position of employment with any potential employer to which he or she was referred by the agencies. The decision of the job applicant to accept or reject employment was one made solely by the job applicant. No potential employer was under any obligation to offer employment to any individual referred to it by the agencies. The agencies do not provide the type service whereby they direct a person, either in their employ or by virtue of any agreement with such person, to provide either temporary or permanent service of any kind to a third person.

It was testified that Henrico County had imposed a business license tax upon the gross annual receipts of Management and Dunhill from the time they commenced transacting business there. This tax was imposed pursuant to County Code § 8-50 upon the theory that the two employment agencies were engaged in the business of a furnisher of domestic or clerical help, labor, or employment. The evidence shows that there are other, somewhat similar businesses which operate in Henrico and which are also taxed for business license purposes under County Code § 8-50. However, these businesses provide part-time or temporary domestic help, labor, employment, or personnel to and for others through their own employees.

Milton B. Carroll has been Supervisor of Licenses for Henrico since 1956, and his duties include the interpretation of those provisions of the County Code which relate to license taxes. Carroll testified that during his employment by the County, he has consistently interpreted County Code § 8-50 to describe and include employment agencies such as Management and Dunhill. He stated that no employment agency, other than the two involved here, has ever challenged the appropriateness of its classification under County Code § 8-50. Carroll said that the adjoining political subdivisions of Richmond and Chester-

field County, as well as the City of Waynesboro and Arlington County, impose license taxes upon employment agencies in their respective jurisdictions pursuant to provisions in their local codes which are identical to Henrico's Code § 8-50.

Edward J. Becker, President of Management, admitted that his company was taxed by the City of Richmond as a furnisher of domestic or clerical help, labor, or employment during the years 1968 to 1972 when it operated and did business in the City. He also testified that approximately 20% of his agency's business consisted of referrals that involved clerical employment. He said Management did not refer applicants to employers who were seeking domestics or a "blue collar type worker or manual labor."

The County concedes that County Code § 8-50 is not a model of perfection but argues that no substantial doubt of its applicability to the agencies here was demonstrated by Management and Dunhill. In essence it contends that the provisions in the ordinance, which taxes not only a furnisher of domestic or clerical help, but also a furnisher of labor and a furnisher of employment, reflect the locality's express intent to include employment agencies such as these within the ordinance's purview.

The taxpayers argue that the issue in the case is a narrow one. They maintain that the ordinance is not indefinite, vague, confusing, or subject to differing opinions as to what it includes, asserting: "Nothing could be clearer than the language of the ordinance." They analyze the language "a furnisher of domestic or clerical help, labor or employment" as limiting the ordinance's applicability to "a business that one can call and ask it to send someone to perform a function that is domestic or clerical in nature." The taxpayers apparently argue that the County intended to tax only employment agencies engaged in the business of furnishing domestic or clerical help. They contend the ordinance only applies where a master-servant relationship exists between the furnisher and the domestic or clerk and the master furnishes the help, labor, and employment to some third party through his servant or agent.

█ We do not believe that those who framed and enacted Henrico's County Code § 8-50 intended it to be restrictively construed so as to limit its application to employment agencies dealing with domestics and clerks only. If we adopt the taxpayers' argument we would in effect be saying that an employment agency that furnishes a cook, a butler, a maid, or a file clerk is subject to the license tax, but an employment agency which furnishes a gardener, a ditchdigger, a car-

penter, a mechanic, or a county manager would not be taxed.

We think it clear that the County intended to and did impose its license tax on employment agencies which furnish domestic and clerical help and also on employment agencies which furnish labor or employment. The County's ordinance is sufficiently broad to cover not only an employment agency engaged in the business of furnishing domestic and clerical help, labor, and employment to others by and through the agency's own employees, but also to agencies which operate in the manner of the two involved here, *i.e.,* furnish services principally in "the sales, administrative, technical and financial fields."

The taxpayers describe an employment agency as "a broker of job market talent; it matches potential employers seeking potential employees with certain qualifications, and vice versa, the result of which matching is a permanent employment relationship." They say an agency furnishes "information" to buyers and sellers of a commodity, "the commodity [of] job openings and talent. . . ." They argue that the service it provides is an informational service available for a fee, and therefore it is not engaged in the business of furnishing, on a temporary basis, personnel to others.

An employment agency concerns itself with jobs, deals with the employment of men and women, and is geared to accomplish that purpose. Individuals desiring employment seek the aid of an employment agency and leave with the agency pertinent information about themselves, their skills, and qualifications. Also, persons and companies seeking employees consult an employment agency and leave with the agency their specifications and profile of the type of employees desired. The business of these agencies is to match employers and job applicants. They do this for compensation, but their fees are not earned and are not collected until a contract of employment is effected, and there has in fact been "an employment" within the purview of the ordinance under consideration. *Black's Law Dictionary* 1291 (5th ed. 1979) defines the word "supply" as meaning "[t]o furnish with what is wanted; available aggregate of things needed or demanded; anything yielded or afforded to meet a want; and the act of furnishing with what is wanted." A "furnisher" of employment is one who furnishes, supplies, affords, or brings about that which is wanted, needed, or demanded. The employment agency makes it possible for a future employer and a future employee to meet, consult, bargain, and ultimately agree. When this agreement is reached, "employment" has occurred. The ultimate goal of any employment agency is to bring about or "furnish" employment, and that is what an

employee and employer seek when they utilize an agency's services. The expertise of the agency furnishes what both seek and want.

The principles which control our decision here are well settled. A tax assessment made by the proper authorities is presumed to be correct and valid, and it is the taxpayer's burden to prove that the assessment is erroneous. *Commonwealth* v. *Bluefield Sanitarium*, 216 Va. 686, 689, 222 S.E.2d 526, 528-29 (1976). Should there be any substantial doubt as to whether any particular business is included within the descriptive or designating language of a legislative enactment imposing a license tax, that doubt must be decided in favor of the taxpayer. *Estes* v. *Richmond*, 193 Va. 181, 189, 68 S.E.2d 109, 114 (1951). And in *Fallon Florist* v. *City of Roanoke*, 190 Va. 564, 590, 58 S.E.2d 316, 329 (1950), we held that "[i]t is well settled that a statute is not fatally indefinite because questions may arise as to its applicability, or opinions may differ with respect to what falls within its terms. . . ."

We must decide here whether Henrico County intended to tax not only a furnisher of domestic and clerical help but a furnisher of labor and/or employment as well. In making this determination we may look beyond the language of the ordinance. Where there may be differences of opinion over the description of the business taxed by an ordinance, we accord consideration to the administrative interpretation and practical construction given it by the public official charged with its administration. While such construction is not controlling, it is one properly to be considered. In *Dept. Taxation* v. *Prog. Com. Club*, 215 Va. 732, 739, 213 S.E.2d 759, 763 (1975), we held the Tax Department's construction of a section of the state Tax Code was a reasonable one and noted that the "construction of a statute by a state official charged with its administration is entitled to great weight."

In the case under review it is admitted that the ordinance in question has been construed and administered by Henrico's Supervisor of Licenses for over twenty years in the manner urged by the County. Also to be noted is the County's representation that certain adjoining and distant political subdivisions operating under similar tax ordinances construe their ordinances in the same manner as Henrico. Of further significance is the admission by Management that it complied with the provisions of a similar Richmond ordinance when it did business in the City, and both taxpayers here admit their compliance with Henrico's ordinance over a period of years prior to their challenge of the ordinance in 1978.

The only practical construction of the ordinance in controversy is that given it by the County. We hold that the businesses conducted by Management and Dunhill in Henrico County are included within the purview and meaning of the County ordinance which imposes a tax on a "furnisher of domestic or clerical help, labor or employment."

Accordingly, the judgment of the lower court is reversed, and the petitions of the taxpayers for relief are dismissed.

*Reversed and final judgment.*