### Richmond

WILLIAM H. FORST, STATE TAX
COMMISSIONER OF VIRGINIA

v.

ROCKINGHAM POULTRY MARKETING
COOPERATIVE, INC., ET AL.

June 12, 1981.

Record No. 790521

Present: All the Justices.

*John G. MacConnell, Assistant Attorney General (Marshall Coleman, Attorney General; Kenneth W. Thorson, Assistant Attorney General; Norman K. Marshall, Assistant Attorney General,* on briefs), for appellant.

*Georgia H. Roberts, Jr. (Donald E. Showalter; Wharton, Aldhizer & Weaver,* on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

Rockingham Poultry Marketing Cooperative, Inc. (Rockingham), and Shen-Valley Meat Packers, Inc. (Shen-Valley), (referred to collectively as the taxpayers) filed separate petitions pursuant to Code § 58-1130 to correct alleged erroneous assessments of capital and income taxes and to recover refunds of taxes paid. Since the two cases involved similar factual situations and an identical issue of law, they were consolidated for trial in the court below and retain that status here. The dispute involves the interpretation of § 13.1-341 which reads:

Nothing in this article shall be construed as exempting any association from the payment of license, income, property or other taxes, State and local; and the designation of any such association in this article as nonprofit shall not be construed as exempting it from State income taxation, notwithstanding any other provision of law. For the privilege of storing and/ or marketing farmers' crops or products including dairy products, fruit or livestock, an association shall, however, pay only an annual license fee of ten dollars which shall be in lieu of all other corporation, franchise and income taxes, taxes on capital, taxes and charges upon reserves held by the association, and all State and local license taxes on that part of its business which is solely and exclusively the storing and/or marketing of farmers' crops or products.

The trial court, on July 17, 1978, held that the taxpayers' inventory and the excess of accounts receivable over accounts payable were capital as defined by Code § 58-411. However, it found that they were part of the taxpayers' storing and marketing activities and were therefore exempt from taxes under the provisions of § 13.1-341. The Commissioner was ordered to refund $80,380.20 to Rockingham and $9,484.13 to Shen-Valley.

The Commissioner filed a notice of appeal, and the record was prepared by the Circuit Court Clerk and transmitted to this Court. On October 18, 1978, the day after the time for filing the petition for appeal had expired, the Commissioner advised the Clerk of this Court that he did not wish to pursue his appeal at that time. This Court, therefore, entered an order returning the record to the trial court.

On October 24, 1978, the Commissioner filed a petition with the trial court for a rehearing pursuant to Code § 58-1137, to which the taxpayers demurred. The trial court granted the rehearing and, after further consideration of the case, entered an order on January 5, 1979, confirming and approving its prior decision. This appeal ensued.

The taxpayers are agricultural cooperatives organized under the provisions of Code § 13.1-312 *et seq.,* cited as the Agricultural Cooperative Association Act. Rockingham deals in poultry, while Shen-Valley handles cattle and hogs.

Rockingham enters into individual contracts with producers of broilers. These contracts provide for the sale of chicks, feed, medications and other supplies to the producers at Rockingham's cost. The title to the chicks passes to the producer upon delivery to the producer's poultry house. The producer grows the broilers to marketable size, at which time they are picked up by Rockingham, which slaughters, cleans, packages and markets the chickens, either as whole broilers or as chicken parts.

When Rockingham picks up the chicks from the producer's farm, the producer is paid a market advance equal to his original purchase cost of supplies from the cooperative, plus an additional amount tied to the prevailing prices for comparable broilers on other markets. At the end of Rockingham's fiscal year, all profits earned in the processing and final disposition of the poultry are distributed to the producers on a patronage basis.

Shen-Valley pays farmers who bring their livestock to its plant an "advance" based on live weight, consistent with the practices

prescribed in the Packers and Stockyards Act. Title to the livestock passes to the cooperative at that time. The livestock is slaughtered and processed into products for sale at wholesale to the consuming public. The products made at the processing plant include hams, bacon, hot dogs, sausage, beef cuts and various bologna, kosher meats and by-products. At the end of Shen-Valley's fiscal year all net margins earned in the processing and final disposition of livestock are accounted to the farmer on a patronage basis and returned to him in the form of patronage allocations.

Rockingham and Shen-Valley timely paid taxes on capital, assessed under the provisions of § 58-418, and income taxes for the years 1973-1977 as follows:

|  | *Year* | *Rockingham* | *Shen-Valley* |
|---|---|---|---|
| Capital taxes | 1973 | $11,578.81 | $1,660.26 |
|  | 1974 | 17,756.34 | 1,473.35 |
|  | 1975 | 14,175.30 | 1,661.60 |
|  | 1976 | 15,197.34 | 1,932.87 |
|  | 1977 | 18,468.94 | 2,756.05 |
| Income taxes | 1974 | $    128.36 |  |
|  | 1975 | 39.03 |  |

■ We first consider the taxpayers' assignment of cross-error. They contend that the trial court erred in granting the Commissioner a rehearing pursuant to Code § 58-1137.[1]

The taxpayers, relying on *Commonwealth* v. *Huntington,* 148 Va. 97, 138 S.E. 650 (1927), argue that since the time period for filing an appeal had elapsed before the petition to rehear was filed, the order of July 17, 1978, became final, and the trial court erred

---

[1] § 58-1137. *Rehearing.*—If, from the statements of the facts or other evidence in a proceeding under §§ 58-1130 to 58-1132 or 58-1134 to 58-1136, the State Tax Commissioner shall be of opinion that the order of the court granting the redress is erroneous, he may, within six months from the time such order is certified by the clerk to the State Tax Commissioner, file a petition for a rehearing of such application. Such petition may be filed in such court, or with the judge thereof in vacation, and shall be in the name of the Commonwealth and the filing of the same shall operate as a supersedeas and, after five days' notice to the applicant, the matter shall thereupon be reheard in such court and witnesses examined in the same manner as if no previous hearing had been had. Upon the rehearing the court shall make such order thereon as may be proper. [This section was subsequently amended to provide a 21-day time period for rehearings. 1980 Va. Acts c. 633.]

in granting the rehearing. *Huntington,* which dealt with an apparent conflict between two sections of the inheritance tax statutes, is inapposite.

This issue was decided in *Putnam* v. *Ford,* 155 Va. 625, 155 S.E. 823 (1930). In *Putnam,* the trial court ruled against the Tax Commissioner who first elected to prosecute an appeal, but, thereafter, pursuant to § 411 of the Tax Code (predecessor of § 58-1137), petitioned the trial court for a rehearing. In rejecting the taxpayer's contention that § 411 gave the Commonwealth the right either to appeal from a judgment on the original petition or to appeal from a judgment on the petition to rehear, but not both, we said:

> We have here two consistent remedies. The State, in the first instance, seems to have intended to apply immediately for a writ of error, but afterwards, for reasons satisfactory to itself, abandoned that purpose and tendered its petition to rehear. . . .
>
> . . . .
>
> The statute itself is entirely reasonable. Motions for the correction of erroneous assessments sometimes touch upon matters of wide importance. In such cases, State officials whose particular duty it is to protect public interests should be given an opportunity to be heard, not only on appeal, but in the trial court, if a rehearing, upon reflection, is deemed advisable.

155 Va. at 630-31, 155 S.E. at 824.

We are of opinion that *Putnam* is controlling in the instant case and that the trial court correctly permitted the rehearing.

■ There are several rules of construction to guide us in our interpretation of § 13.1-341. An exemption from taxation is to be strictly construed against the taxpayer, with all doubts resolved in favor of the Commissioner. *Solite Corp.* v. *King George Co.,* 220 Va. 661, 662-63, 261 S.E.2d 535, 536 (1980); *Webster* v. *Department of Taxation,* 219 Va. 81, 84, 245 S.E.2d 252, 254 (1978); *Commonwealth* v. *Community Motor Bus,* 214 Va. 155, 157, 198 S.E.2d 619, 620-21 (1973). The burden is on the taxpayer to show that he comes within the exemption. *Commonwealth* v. *Manzer,* 207 Va. 996, 1000, 154 S.E.2d 185, 189 (1967).

The trial judge felt that § 13.1-341 was not an exemption provision, but merely a limitation on taxes, and that the above rules did not apply. We cannot agree. The rule of strict construction stems from the announced policy of this Commonwealth to distribute the tax burden uniformly and upon all property. VA. CONST. art. X, § 1. Thus, any provision granting an immunity from taxes, whether called an exclusion, limitation or exemption, is narrowly construed.

The taxpayers argue that even if the provision in question is an exemption the general rule of strict construction should not apply in this case, pointing to § 13.1-312, which provides that the Agricultural Cooperative Association Act should be "liberally construed." The taxpayers ignore, however, the first sentence of § 13.1-341 which reads: "Nothing in this article shall be construed as exempting any association from the payment of license, income, property or other taxes, State and local; . . . ."

■ Not only is § 13.1-341 to be strictly construed against the taxpayer, but we are faced with a long-standing Department of Taxation interpretation contrary to the taxpayers' position. The Department has long maintained that the section does not apply to cooperatives that process goods before marketing them. In fact, an opinion letter to that effect had been issued in 1954 to Shen-Valley, and both Shen-Valley and Rockingham had paid taxes for a number of years.

Under the above circumstances, the Commissioner's position is entitled to great weight. *Webster,* 219 Va. at 84-85, 245 S.E.2d at 255; *Winchester TV Cable* v. *State Tax Comm.,* 216 Va. 286, 289-90, 217 S.E.2d 885, 889 (1975). The assessment is presumed to be valid, and the taxpayers have the burden of proving that it is contrary to law. *County of Henrico* v. *Management Recruiters,* 221 Va. 1004, 277 S.E.2d 163 (1981); *Commonwealth* v. *Bluefield Sanitarium,* 216 Va. 686, 689, 222 S.E.2d 526, 528-29 (1976).

■ Guided by the foregoing, we turn to the interpretation of § 13.1-341. The cooperatives argue that, since all of their activities relate to the storing and marketing of farm products, upon the payment of the $10 license fee they are exempt from all other taxes. They contend that the consumer would not buy a live chicken or a whole hog, so the cooperatives' making of consumer items, e.g., chicken parts and hot dogs, is merely part of the marketing activity. The trial court rejected this argument and we agree.

Section 13.1-315 sets forth the permissible corporate purposes of an agricultural cooperative. It may engage in "[p]roducing, assembling, marketing, buying or selling agricultural products, or harvesting, preserving, drying, processing, manufacturing, blending, canning, packing, ginning, grading, storing, warehousing, handling, transporting, shipping or utilizing such products, or manufacturing or marketing the by-products thereof." Had the General Assembly wished to exempt all these activities from taxation, it would have done so. Instead, it provided a narrow exemption for "that part of its [the cooperative's] business which is solely and exclusively the storing and/or marketing of farmers' crops or products." Processing is not a part of marketing, and that portion of a taxpayer's business is not exempt from taxation.

■ Correctly having determined that the petitioners engaged in processing as well as marketing, the trial court was faced with the task of allocating the cooperatives' capital between the two activities. It held that all machinery, tools and equipment and other property used in processing were not included in the exemption offered by § 13.1-341.[2] All other capital and income of the cooperatives was held to fall within § 13.1-341. It is this broad interpretation of the section that the Commissioner challenges, and, given the rules of construction we have laid out, we find that the trial court erred.

Up until this point, we have focused our inquiry on the difference between processing and marketing. However, not all marketing is exempt from taxation under § 13.1-341. Only the marketing of "farmers' crops or products" is covered. The trial judge held that "farmers' crops or products" was the same as "agricultural products" as defined by the act[3] and, therefore, that the cooperatives were exempt from taxation in marketing the goods they had processed.

The term "agricultural products" includes livestock and livestock products, poultry and poultry products, and other farm products. It is broader than the term "farmers' crops and prod-

---

[2] These items do, however, come within the exemption offered by § 58-412. The net result of the trial court's decision was to exempt the cooperatives from the payment of all capital and income taxes.

[3] "'*Agricultural products*' include livestock and livestock products, dairy products, poultry and poultry products, seeds, nuts, ground stock, horticultural, floricultural, viticultural, forestry, bee and any and all kinds of farm products." § 13.1-313(a).

ucts." If the General Assembly had intended to use the term "agricultural products," it would have done so. Instead, it used the narrow term "farmers' crops or products," which must be interpreted in the context of the exemption provision in which it appears. When the General Assembly uses two different terms in the same act, it is presumed to mean two different things. *Wine* v. *Commonwealth,* 301 Mass. 451, 457, 17 N.E.2d 545, 548 (1938).

The term "farmers' crops or products" has a clear and precise meaning. It refers to those items produced by the farmer himself, as opposed to those processed by a cooperative or other party. Since the words *crops* and *products* are both used, the farmer could engage in some processing and stay within the definition.

This strict interpretation of § 13.1-341 properly limits the scope of the tax exemption without undermining the purposes of the Agricultural Cooperative Association Act. Cooperatives were designed to increase the market impact of farmers. The cooperatives can serve this function by marketing products that have been processed on the farm to wholesalers or retailers, or by selling the raw farm products to a processor or packing house. It is only when the cooperative itself processes what it receives from the farmers that it loses the benefit of § 13.1-341.

Accordingly, we are of opinion that the assessments made against the taxpayers for capital and income tax were proper and that they are not entitled to a refund. Therefore, the order of the trial court will be reversed and final judgment entered in favor of the Commissioner dismissing the taxpayers' petitions.

*Reversed and final judgment.*