## CIRCUIT COURT OF HENRICO COUNTY

County of Henrico

    v.

Custom Mailers

February 1, 1984

Case No. 82-L-471

By JUDGE E. BALLARD BAKER

By Motion for Judgment, the County seeks recovery of $15,959.36 allegedly due to it by Custom Mailers (CM) based on an assessment by the County for delinquent license taxes for 1979, 1980, 1981 and 1982. CM filed an answer alleging it had paid all license taxes properly assessable and later filed a Counterclaim for Declaratory Judgment. At a pretrial on December 2, 1983, the Court agreed that evidence would be heard on January 13, 1984, and the Court would rule on the major issue of classification, that is, what categories, if any, are exempt from the license tax. The amount of tax due, if any, is dependent on that.

The case was heard on January 13, 1984, and has been fully briefed and argued. There are two issues:

(1)    What portion, if any, of CM's receipts carried on CM's books as "brokerage charges" are subject to the County license tax?

(2)    Is CM an "Advertising agent or agency" under the County license tax ordinance?

Briefly, CM is in the business of direct mail marketing. It plans, designs, prints and mails advertisements and other material to members of the public for its customers or clients.    The full scope of its activity was presented at the trial and is indicated by exhibits which were filed.

## BROKERAGE CHARGES

CM's books show amounts received by it from its customers as "brokerage charges." In October 1982, on audit, the County took the position that these receipts are subject to the County license tax. CM disagreed.

Brokerage charges are amounts received by CM from its customers for items or services bought by CM from third persons for use in doing the thing CM's customer wants done. Such items, for purpose of this case, include envelopes and premiums. The parties have agreed that to the extent brokerage sales include premiums, they are taxable. The issue is envelopes.

CM takes the position that its use of envelopes bought from others is ,manufacturing. It also takes the position that it should be classified as an "advertising agent or agency" which would allow it to exclude brokerage sales, but that is a broader issue to be considered next.

Section 12.2 of the County license ordinance defines gross receipts on which the license tax is assessed as:

The gross sales of merchandise and the gross receipts of the business, occupation or profession from all earnings, fees, commissions, brokerage charges and rentals, and

from all income whatsoever arising from or growing out of the conduct of the business . . . without any deduction whatsoever, unless otherwise expressly provided.

Section 12-118 excludes merchandise manufactured by a merchant and sold at the place of the manufacturer. CM contends that what it does with envelopes it buys from others is a manufacturing process.

CM uses envelopes it purchases in making up a direct mail package for its customer. CM prints on some envelopes it buys. CM also designs envelopes for its customers and has them made and printed for CM by others. CM also sold envelopes, in bulk and individually, including envelopes it has purchased from others, but there is testimony that this is no longer done.

At the present time CM does very little printing on envelopes. It did more in 1978-1982. At present, all envelopes CM buys are custom made.

Defendant's Exhibits A, B, C and D were filed as samples of what CM does in the envelope area.

The County, while admitting that printing a message on a blank piece of paper is manufacturing because it changes the nature of a blank paper to a message, contends that the nature of an envelope remains the same regardless of what is printed on it. It carries contents.

The Supreme Court has had several cases in which it has considered what is manufacturing, the latest of which is Solite Corp. v. King George County, 220 Va. 661, where it said:

. . . unless the processing transforms the new material into an article or a product of substantially different character, it cannot be considered to be manufacturing . . . .

"Manufacture implies a change, but every change is not manufacture, and yet every change in an article is the result of treatment, labor and manipulation. But something more is necessary . . . There must be a transformation; a new and different article must emerge, 'having a distinctive name, character or use'." (220 Va. 663).

An exemption provision such as 12-118 is construed strictly against the taxpayer.

Upon consideration of its understanding of what CM does with envelopes it buys from other people, this Court is of opinion that CM is not engaged in manufacturing when it uses the envelope, however it may be dressed up, as a container to carry a message inside.

When the envelope is itself the message, as in Exhibit C of CM, then it is not being used as a container but is an article of a substantially different character. Consistent with the acceptance of printing a message on a blank sheet of paper as being a manufacturing process, when a thing is the entire package and not a container carrying a separate article inside, then that is a manufactured thing. If CM does this, that is, prints a message on an Exhibit C item, at its place of business, then the end is a manufactured product; just as would be the result of printing a message on a sheet of blank paper.

## ADVERTISING AGENCY

CM, in addition to contending that its receipts from brokerage sales are receipts from a manufacturing process contends it is an advertising agency within the meaning of section 12-41 of the County Ordinance.

Section 12-41 enumerates close to 100 businesses as subject to a business license under Personal Services. Included in this section is "Mailing Services." Also included is "Advertising Agents and Agency." CM's county license questionnaire from 1974 through 1980

shows the nature of its business as Personal Services-Mailing. For 1981 and 1982, the nature of the business is shown merely as "PER SER." The County license bills for 1979-1982 list the occupation as "Personal Service," "Pers. Serv. (Mailing)," "Per Ser" and "Per Ser." The adjusted bill based on the audit shows the occupation as "Ret & Pers. Serv." The audit report shows CM classified as "Ret. Merch. & Pers. Serv."

The parties are in agreement that CM has been licensed under 12-41 as providing a mailing service. It is also agreed that a business can be licensed in more than one classification. CM contends it, either entirely or to a substantial extent, does business as an advertising agent and should be classified under 12-41's "Advertising agents and agency" classification. If this was done, then under 12-43 it could exclude from gross receipts amounts paid by CM for certain things specified in 12-43.

The question arises: What is an advertising agent or agency within the meaning of 12-41. The classification is not defined, nor has either party, or this Court, found any case involving a definition of an advertising agent or agency in this context.

"Agency" and "Agent" are defined in 1A M.J., Agency, sect. 2 as:

> "Agency" has been defined as the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control and the agreement by the other so to act. The term, however, seems to imply two quite distinct things: Namely, a contract between principal and agent and the legal means by which the principal is made, without his direct participation, a party to a contract with a third person.

> An agent is one who represents another, called the principal, in dealing with third

persons. He is one who undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account of it.

"Agency" is also defined in various ways in Webster's Third New International Dictionary, including in order given:

1: the capacity, condition, or state of acting or of exerting power: action or activity: operation . . .

2: a person or thing through which power is exerted or an end is achieved: INSTRUMENTA-LITY, MEANS . . .

3a: the office or function of an agent, b: the relationship between a principal and his agent

4a: an establishment engaged in doing business for another [an advertising -] [an employment -] b: the place of business or the district of such an agency.

An agent is similarly defined.

Thus, an agency may be the means or instrument through which something is done -- General Motors distributes motor vehicles through the agency of independent dealers --, or an agency may act as an agent for a principal -- the traditional principal -- agent relationship known to the law --, or an agency may be someone doing business for another, as where CM prepares letters and materials and mails them for its customers.

What meaning is to be given to the words "Advertising agent or agency" in the Henrico ordinance?

This classification has been in the ordinance for many years. At no time does it appear that either CM or the County considered that CM was an advertising

agency or agent. As noted, from 1974 through 1980, CM's business as shown on the questionnaire was "Personal Services-Mailing." No objection was made by anyone. While the "mailing" designation appears to have been deleted since 1980, there is no reference to being an advertising agency or agent in the questionnaire or on any license tax bill prior to this dispute.

The County points to the administrative interpretation of the ordinance. The advertising classification has been applied by the County to those organizations that place advertising for clients with the media and are compensated on a commission basis, which commission is a percent of the media charge. Milton Carroll, Supervisor of licenses for the County, testified that 13 organizations in the County are classified as "Advertising agents or agency" and that all deal with the media for a third party and are compensated on commission. None do business in the manner of CM.

County of Henrico v. Management Recruiters, etc., 221 Va. 1004 at 1011, points out that:

> Where there may be differences of opinion over the description of the business taxed by an ordinance, we accord consideration to the administrative interpretation and practical construction given it by the public official charged with its administration. While such construction is not controlling, it is one properly to be considered.

The administrative practice has been to classify under "Advertising agents or agency" only those who contract with a principal to provide an advertising service for that principal through the media, and whose compensation is a percent of what the media charges for publishing or broadcasting or proclaiming the message. The practice has not been to include under "advertising agents and agency" those who merely perform an advertising service, that is, prepare

advertising material for a fee and distribute it as does CM.

It appears clear that CM is an agency through which various businesses do their advertising. Direct mail service does provide an advertising service. (For a somewhat interesting, but not really relevant case in which this is recognized, see Fisher-Stevens, Inc. v. Director of Taxation, 298 A.2d 77 at 80 (N.J. 1972).)

CM meets the definition of an agent or agency to the extent that it is the means, the instrumentality, through which various businesses do their advertising. CM does not meet the definition of an agent or agency in the traditional sense; there is no third party with whom CM deals as does an advertising agent or agency. CM says that it deals with the U. S. Postal Service, and that is the media. The Postal Service is indeed the vehicle by which the advertising material made by CM is distributed, but CM's fee is not based on a percent of the cost of mailing.

Classification of businesses for license tax purposes is a legislative matter. Exclusion from gross receipts for license tax purposes is likewise for the legislative authority. The business of CM could be allowed the same exclusions from gross receipts as an advertising agent or agency is allowed, but unless the legislature so provides or unless CM comes within the advertising agent or agency classification, those exclusions are not available.

The Board of Supervisors has not allowed these exclusions to those in the mailing services business.

The classification of CM as a mailing service and not as an advertising agent or agency has been a decision by the County licensing authority. CM for many years has acquiesced in that classification.

There is a rational distinction between a business which provides an advertising service to clients within the principal-agent relationship and a business

which is the means or the instrumentality through which advertising is done. CM is in the latter category. While CM is an agent or agency in the sense that it is the means whereby its clients advertising material is prepared and distributed, it is not an agent or agency which acts for a principal in dealings with third persons.

The conclusion this Court reaches is CM approaches, but does not reach, being an advertising agent or agency. CM falls in the "Mailing Services" classification, where it has been since 1974.