COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Senior Judge Humphreys
Argued at Lexington, Virginia


WOODROCK RIVER WALK LLC

                                                            OPINION BY
v.        Record No. 1860-23-3                      JUDGE DANIEL E. ORTIZ
                                                          OCTOBER 8, 2024
LLOYD RICE, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF SALEM
J. Christopher Clemens, Judge

Patrick R. Pettitt (Senex Law, PC, on briefs), for appellant.

Jarryd Smith (Legal Aid Society of Roanoke Valley, on brief), for
appellees.


Under the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act, a

landlord may not require a tenant to vacate the premises until 30 days after receiving a notice to

vacate. Here, Woodrock River Walk, LLC issued a notice of failure to pay rent, which stated

that, in accordance with Virginia law, Lloyd Rice and Christine Andrade (collectively Rice) must

pay their owed rent within five days or their lease would be terminated. The notice also

informed Rice that under the CARES Act, they were not required to leave their premises for 30

days. Twenty-nine days later, Woodrock initiated an eviction by filing a summons for unlawful

detainer. The circuit court ruled that the summons violated the CARES Act and dismissed the

eviction proceeding. Woodrock appeals, arguing that only the execution of a writ of eviction

requires a tenant to vacate.

We reverse and remand for three reasons. First, the plain language of the CARES Act

does not prevent a landlord from filing a summons during the 30-day period following the notice

to vacate. Second, a summons does not require a tenant to leave the premises. A landlord

cannot compel a tenant to vacate until an officer executes a writ of eviction; thus, it is only the execution of a writ during the 30-day timeframe that would violate the CARES Act. Third, although Woodrock terminated Rice's lease, requiring Rice to promptly move out under Code § 55.1-1233, the federal CARES Act preempts Code § 55.1-1233's promptness requirement and grants the tenant 30 days to remain on the premises after receiving a notice to vacate. Based on this, the circuit court erred when it found that Woodrock's initial unlawful detainer summons violated the CARES Act.

BACKGROUND

The following facts are not in dispute. On December 7, 2022, Woodrock issued a notice of failure to pay rent to Rice. The notice stated that Rice must pay the full amount of their owed rent within five days, or their lease would be terminated and Woodrock could "proceed to obtain possession of the [d]welling as provided in Virginia Code § 55.1-1251." The notice, however, also explained that Rice was "not required to vacate the [d]welling during the 30-day CARES Act [n]otice period."

After Rice failed to pay, Woodrock filed a summons for unlawful detainer in the City of Salem General District Court (GDC). Woodrock filed the summons on January 5, 2023—29 days after issuing the notice. The GDC dismissed the unlawful detainer without prejudice. Woodrock appealed to the Salem Circuit Court.

In response, Rice filed a motion to dismiss on special plea, asserting that Woodrock's summons violated the CARES Act. Rice argued that under the CARES Act, a landlord cannot require a tenant to leave their property until 30 days after the tenant receives notice, and here the summons was issued 29 days after Rice received notice. Woodrock filed a memorandum in

opposition[1] to Rice's motion, claiming that the 30-day requirement under the CARES Act only applied to writs of eviction, not to summonses for unlawful detainers. In its September 27, 2023 final order, the circuit court denied Woodrock's memorandum in opposition and granted Rice's motion to dismiss on special plea.[2] At the hearing, the court stated that after the landlord provides notice, the CARES Act requires the landlord to wait 30 days before filing a summons. Woodrock appeals.

ANALYSIS

I. Standard of Review

Because this appeal solely centers on the statutory interpretation of the CARES Act and Virginia landlord tenant law, we apply a de novo standard of review. *L.F. v. Breit*, 285 Va. 163, 176 (2013).

II. Actions in an Eviction Proceeding

In 2020, Congress enacted the federal CARES Act in response to the COVID-19 pandemic and the economic crisis it created. CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020). Section 9058 of the CARES Act provides protection to tenants in covered housing units

---

[1] Woodrock styled this filing as a "Demurrer and Memorandum in Opposition to Defendants' Motion to Dismiss on Special Plea." The Court is unclear on how a plaintiff could file a demurrer in response to a motion to dismiss on special plea. Accordingly, we will treat the filing only as a memorandum in opposition.

[2] The final order also states that the parties agreed:

> [T]here was no dispute about the underlying case, that the proffered Lease, Ledger, Notice of Failure to Pay Rent, and Tenant Rights & Responsibilities, were all true and correct copies, and that they combined to establish a prima facie case for all amounts claimed due by Plaintiff as set forth in the Bill of Particulars and/or Memorandum in Opposition to Defendants' Motion to Dismiss on Special Plea.

The memorandum in opposition states that Rice owes $15,624.25 in rent, $398 in late fees, $60 in court costs, reasonable attorney fees, and 6% interest from the date of judgment.

whose landlords receive financial benefits from certain federal programs. Under 15 U.S.C. § 9058(c)(1), a landlord "may not require the tenant to vacate the covered dwelling unit before the date that is 30 days after the date on which the lessor provides the tenant with a notice to vacate." As a matter of first impression, we must decide whether either filing a summons for unlawful detainer or terminating a lease requires a tenant to vacate their premises. If so, a landlord violates the CARES Act if they take either action during the 30 days following the issuance of a notice to vacate. First, we analyze whether a summons mandates that tenants leave their premises. Second, we examine if the termination of a lease requires tenants to vacate their premises.

A. *A summons for unlawful detainer does not require a tenant to vacate their premises.*

Examining the plain language of the CARES Act, we analyze whether the circuit court properly interpreted the statute when it held that a summons for unlawful detainer issued within the 30 days after providing notice violated the CARES Act. "Under basic rules of statutory construction, we examine a statute in its entirety, rather than by isolating particular words or phrases." *Cummings v. Fulghum*, 261 Va. 73, 77 (2001). We "'presume that the legislature chose, with care, the specific words of the statute' and that '[t]he act of choosing carefully some words necessarily implies others are omitted with equal care.'" *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) (alteration in original) (quoting *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020)). And when the legislature "uses two different terms in the same act, it is presumed to mean two different things." *Klarfeld v. Salsbury*, 233 Va. 277, 284-85 (1987) (quoting *Forst v. Rockingham Poultry Mktg. Coop., Inc.*, 222 Va. 270, 278 (1981)).

Adhering to these rules of statutory construction, we examine both the subsection at issue, 15 U.S.C. § 9058(c), and the preceding subsection, 15 U.S.C. § 9058(b). As noted above, 15 U.S.C. § 9058(c) states that a landlord "may not require the tenant to vacate" until 30 days have passed

from when the landlord provided the notice to vacate. Subsection 9058(b)(1) prevents landlords from "mak[ing], or cau[sing] to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession of the covered dwelling from the tenant for nonpayment of rent or other fees or charges" for a period of 120 days after the enactment of the CARES Act. While we note that this subsection of the statute has expired, it was passed by Congress at the same time as subsection 9058(c), in response to the COVID-19 pandemic. And under this language, a summons for unlawful detainer—which is filed with a court to initiate an eviction action—is a type of covered "filing." Thus, during the covered 120-day period, a landlord could not file a summons for unlawful detainer. In contrast, subsection (c) does not mention filings, including a summons. If Congress had intended to include filings within this subsection, it would have said so, as it does in the directly preceding subsection. Given this, we find that Congress did not intend 15 U.S.C. § 9058(c) to prevent landlords from filing a summons during the 30 days after a landlord provides notice.

As filings are not mentioned in 15 U.S.C. § 9058(c), the only way for a summons to violate the CARES Act would be if it required a tenant to vacate their premises. This is not the case. The Supreme Court has specified that an

> [u]nlawful detainer is an action against a defendant who lawfully entered into possession of real property but whose right to lawful possession has since expired. It is brought by a plaintiff lawfully entitled to possession at the time of suit, which the defendant is then unlawfully withholding. The validity of the plaintiff's right of possession is an issue that, when disputed, must be determined in the adjudication of the unlawful detainer action.

*Parrish v. Fannie Mae*, 292 Va. 44, 50 (2016) (citation omitted). Thus, a summons for unlawful detainer is merely the initial filing that begins the eviction proceeding. If a premises "is unlawfully detained by the person in possession thereof," a landlord or other person entitled to possession may file a summons for unlawful detainer. Code § 8.01-126. This summons "*authorize[s]* the removal of the tenant or other person in possession," as opposed to mandating

- 5 -

the tenant to vacate upon service of the summons. *Id.* (emphasis added). Code § 55.1-1251 states that "[i]f the rental agreement is terminated, the landlord may have a claim for possession . . . and such claims may be *enforced*, without limitation, by initiating an action for unlawful detainer." (Emphasis added). The terms "authorize" and "enforced" demonstrate that a summons is simply a step in the enforcement of an eviction action; the landlord does not yet have the legal right to remove the tenant.

In fact, there are many steps after a court issues a summons before a landlord can compel the tenant to vacate. After a summons is issued, served, and returned, "the case [is] heard and determined by the judge of a general district court." Code § 8.01-126. At this hearing, if a tenant offers a redemption tender[3] or if the tenant or a third party pays all owed fees the court may dismiss the action under Code § 55.1-1250(B) and (C). If payment is not made, the court may issue a judgment for the landlord for possession of the premises at the same hearing, subsequent hearings, or trial. Based on the judgment, the landlord may request a writ of eviction. Code § 8.01-129. If the court grants the writ, an officer may not execute the writ until after the expiration of the tenant's ten-day appeal period. *Id.* An officer must serve a notice of intent to execute the writ at least 72 hours before the eviction. *Id.* Even then, the writ of eviction will be canceled if the tenant or a third party pays the landlord all amounts owed "48 hours before the date and time scheduled by the officer" executing the writ. Code § 55.1-1250(D). Based on this lengthy process—which contains various opportunities for an eviction to be canceled—we find that it is only when an officer executes the writ that a landlord has the legal power to remove the tenant from the premises. Thus, only an officer's execution of a writ during the 30-day window

---

[3] A "'redemption tender' means a written commitment to pay all rent due and owing as of the return date, including" associated fees "within 10 days of such return date." Code § 55.1-1250(B).

violates the CARES Act; issuance of a summons before 30 days has passed does not violate the Act.

The circuit court specified that it was relying on the reality of the Virginia eviction process in making its ruling. It stated that "a judge does not see the writ. The writ is in the clerk's office . . . . [I]f previous paperwork that was entered by the judge is appropriately complied with on the writ, then the writ just goes out. The judge [does not] sign the writ." According to the circuit court, this means that the only time a judge would be able to prevent a writ from being issued during the 30 days would be at the filing of a summons stage. But there is no need for circuit courts to take this preventive action because we hold the issuance of a writ during the 30-day window is lawful under the CARES Act. It is only when an officer executes a writ during the 30-day window that the CARES Act is violated. In practice, given the multi-step requirements of an eviction, an officer will rarely be able to execute a writ during the 30 days.[4] But if an officer executes a writ during the 30-day window, this is unlawful, and the tenant may assert their rights accordingly.

---

[4] First, when a tenant has failed to pay, the landlord must issue a notice of failure to pay to the tenant and provide the tenant with a minimum of five days to pay or quit. Code § 55.1-1245(F). Second, the summons must be signed, issued, and served, which we will assume takes a day. Code § 8.01-126(B). Third, an initial hearing on the summons must occur "as soon as practicable," but at least ten days after the summons is served. *Id.* At this hearing, the court may issue a judgment of possession and a writ of eviction, which an officer may not enforce during the tenant's ten-day appeal period. Code § 8.01-129. This means that in a best-case scenario a writ will not be enforced for 26 days. Given the realities of how long it takes to serve a tenant and schedule a hearing, and the possibility of multiple hearings—for example, if a trial is requested—it is highly likely that in most cases, the eviction process will take more than 26 days.

We do recognize that there are different statutory requirements for notice depending on the grounds for eviction and that these varying requirements change this timeframe calculation. Despite these differing time frames, the same principle holds: under the CARES Act, an officer may not enforce a writ of eviction until at least 30 days after a notice to vacate.

Here, Woodrock filed a summons 29 days after issuing a notice of failure to pay. As a summons does not require a tenant to leave their premises, Woodrock's action did not violate the CARES Act.

B. *Termination of a lease does not require a tenant to vacate their premises.*

We next turn to whether a notice terminating a lease violates the CARES Act. Adhering to Code § 55.1-1245(F), Woodrock's notice stated that if Rice did not pay the amounts due within five days, then Woodrock would terminate Rice's lease. As Rice did not pay, Woodrock validly terminated the lease under Virginia law. Rice argues that terminating their lease during the 30-day window violated the CARES Act because "[t]he lease is the instrument that gives [Rice] the right to remain in the dwelling unit, [and] if the lease terminated [then] they have no right to remain in the unit."

The CARES Act refers to "provid[ing] the tenant with a notice to vacate" as the action that triggers the 30-day timeframe. Here, Woodrock issued a notice of failure to pay to the tenant in accordance with Code § 55.1-1245. We interpret this notice as a notice to vacate under the CARES Act because it terminated Rice's lease after five days for failure to pay, and the termination of the lease mandated Rice vacate. Code § 55.1-1233 states that "[a]t the termination of the term of tenancy, whether by expiration of the rental agreement or by reason of default by the tenant, the tenant shall promptly vacate the premises." There is a clear conflict between this and the CARES Act, as it is impossible for a landlord to both require the tenant to move out promptly and not to require the tenant to move out during the 30-day timeframe. Thus, the state law here is preempted by the federal CARES Act. *Maretta v. Hillman*, 283 Va. 34, 40 (2012) ("[S]tate law . . . is preempted 'to the extent that it actually conflicts with federal law. Such a conflict arises when compliance with both federal and state regulations is a physical impossibility.'" (quoting *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153

(1982))).  This does not mean, as Rice asserts, that a landlord may not terminate a lease during the 30-day window.  It only means that after a landlord terminates a lease, the tenant need not immediately vacate.  Rather, under the CARES Act, the landlord may not mandate that the tenant leave the premises for 30 days after the tenant receives notice of failure to pay.  This interpretation adheres to the purpose of the CARES Act—to provide protection to tenants by allowing them to remain in their premises for additional time despite receiving a notice to vacate.

Here, the notice complied with both Virginia law and the CARES Act.  The notice followed Code § 55.1-1245(F) by informing Rice that they had five days to pay their rent and late fees, or their lease would be terminated.  It also adhered to the CARES Act by instructing Rice that they were not required to vacate until 30 days after receiving the notice to pay or quit.  We therefore find that Woodrock's notice was lawful.

CONCLUSION

Neither a summons nor a notice of termination of a lease requires a tenant to vacate the premises.  A landlord has a legal right to remove a tenant from their premises only when an officer executes a writ of eviction, after a landlord complies with multiple procedural stages in the eviction process.  Therefore, the CARES Act is violated only when an officer executes a writ during the 30 days after a landlord has served a notice to vacate.  Because the circuit court erroneously found that the summons violated the CARES Act, we reverse and remand this matter.[5]

*Reversed and remanded.*

---

[5] Because we conclude the circuit court erred in its interpretation of the CARES Act, we need not reach Woodrock's remaining assignments of error.

- 9 -